R. SHANE JOHNSON (14217)
shane@utahdefense.com
24 D STREET
SALT LAKE CITY, UT 84103
(801) 656-8061 PHONE
*Attorney for Plaintiffs*

---

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

---

| | |
|---|---|
| MARVIN BARNES ELLIS, ANN JEANETTE MARIE ELLIS, individuals, and A.K.E., a minor, <br><br>     *Plaintiffs*, <br><br>     -*v*- <br><br> DANIEL MORZELEWSKI, KYLE MAHONEY, and KEN EATCHEL, individually, and in their official capacities as Cottonwood Heights Police Department employees; and DOES 1-20, whose identities are currently unknown, <br><br>     *Defendants*. | **CIVIL RIGHTS COMPLAINT** <br><br> Civil No. 2:21-cv-00639-DAO |

---

Plaintiffs Marvin Barnes Ellis ("Mr. Ellis"), Ann Jeanette Marie Ellis ("Mrs. Ellis"), and their minor child A.K.E. ("A.K.E"), by and through counsel, hereby complain against Defendants Daniel Morzelewski ("Sgt. Morzelewski"), Kyle Mahoney ("Ofcr. Mahoney") and Ken Eatchel ("Sgt. Eatchel"), and assert the following allegations:

## PRELIMINARY STATEMENT

The following allegations are based on the undersigned's understanding of information presently known. This is a civil rights action in which Plaintiffs seek relief for Defendants' violations of their rights as guaranteed by the United States Constitution, specifically, the First,

Fourth, Fifth, Sixth, and Fourteenth Amendments, which are further secured by the Civil Rights Act of 1871, codified as 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

On the early evening of December 8, 2018, the Ellises, recently homeless, checked in to an extended stay hotel in Cottonwood Heights, Utah. Shortly after, neighbors complained to police of hearing an argument and what they surmised to be a person being slammed against a wall inside the Ellises' room. Within a few minutes, Defendants – Cottonwood Heights Police Department employees Sgt. Morzelewski, Sgt. Eatchel, and Ofcr. Mahoney – arrived at the hotel and knocked on the Ellises' door. Mrs. Ellis opened the door and what followed was a textbook example of abuse of authority, excessive force, and retaliatory prosecution.

Mrs. Ellis told police the report of a physical confrontation was false, explaining there was none, and that the Ellises' loud television was the culprit. The officers nonetheless entered the Ellises' hotel room without a warrant, without an invitation, without consent, and without any other exception to the warrant requirement. Sgt. Eatchel summoned Mrs. Ellis into the hallway for questioning while two others incessantly hounded Mr. Ellis with requests to provide his state-issued identification card, and to come and talk to them. Mr. Ellis, seated in a chair in the far corner of the hotel room, repeatedly asked the officers to retreat to the threshold of the hotel room, assuring them he had identification, that he would provide it once the officers exited his "home," and he would talk to them at the threshold.

Mr. Ellis, hobbled by a recent knee surgery and a recent knee replacement surgery, relented to the officers' requests and walked to within a few feet of the doorway of the hotel room with his wallet and state-issued identification in hand. Mr. Ellis leaned against a wall several feet inside the doorway of the hotel room as he remonstrated with the officers inside his home. Sgt. Morzelewski falsely accused Mr. Ellis of "puff[ing] up" to Sgt. Morzelewski as Mr.

2

Ellis leaned against a wall and attempted to activate his cell phone's video recorder. Defendants, without warning or explanation, grabbed Mr. Ellis, yanked him out of his home, electrocuted him with a handheld conductive energy device, handcuffed him facedown in the hallway, wrenched his handcuffed arms behind his back toward his head, and left him handcuffed behind his back for nearly two hours, including while laying on his back on an ambulance gurney and in a hospital bed. Mrs. Ellis and A.K.E. looked on in horror as Defendants brutalized their husband and father, respectively.

Defendants referred Mr. Ellis for prosecution on a triumvirate of so-called "contempt of cop" offenses: assault against a peace officer, interfering with arrest, and failure to disclose identity. All charges against Mr. Ellis were *twice* dismissed for failure of Defendants to appear for scheduled preliminary hearings, naked efforts by Defendants to skirt their obligations to appear and justify their actions under penalty of perjury. This action seeks to hold Defendants to their legal and moral obligations to make amends for their unconstitutional, at times despicable, conduct.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on each and every claim pleaded herein.

## PARTIES

1.   Plaintiffs Marvin Ellis ("Mr. Ellis"), Ann Jeanette Marie Ellis ("Mrs. Ellis") and their minor child A.K.E.  ("A.K.E.") are citizens of the United States and were residents of Salt Lake County, Utah, at the time of the events giving rise to this action.

2.   At all relevant times, Defendants ("Defendants" collectively) Daniel Morzelewski ("Sgt. Morzelewski"), Kyle Mahoney ("Ofcr. Mahoney"), and Ken Eatchel ("Sgt. Eatchel") were

employed as police officers by Cottonwood Heights Police Department, a political subdivision of the State of Utah.

3.   At all relevant times, Defendants were acting in the course and scope of their employment with the Cottonwood Heights Police Department, and under the color of law.

4.   The Ellises are suing Defendants in their individual and official capacities.

## JURISDICTION AND VENUE

5.    This action arises under the First, Fourth, Fifth, Sixth and Fourteenth amendments of the United States Constitution and 42 U.S.C. §§ 1983, 1985, 1986 and 1988. Accordingly, the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6.   The claims made in this Complaint occurred and arose in Salt Lake County, State of Utah. Accordingly, venue is proper under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

7.   Mr. Ellis, an African American, is a longtime resident of Utah, a father, a husband, and a truck driver by trade.

8.   Mrs. Ellis, a white American, is also a longtime Utah resident, and primarily a homemaker during the decades she's been married to Mr. Ellis.

9.   Mr. and Mrs. Ellis are the parents of A.K.E., a biracial American child, who was 13 years old on December 9, 2018.

10.   Racism occurs in Utah.

11.   Racism occurs in policing in Utah.

12.   Due to hard times caused by Mr. Ellis's then-recent knee surgery and knee-replacement surgery, the Ellises found themselves homeless, and moved into an extended stay hotel in Cottonwood Heights on December 9, 2018.

13.   After checking in, Mrs. Ellis took a bath while Mr. Ellis and young A.K.E. watched TV in the hotel room that was to be the Ellises' home for the foreseeable future.

14.   Shortly after Mrs. Ellis finished her bath, a neighbor, Evan Werner ("Mr. Werner"), pounded on the Ellises' door and asked Mr. Ellis what's going on.

15.   Mr. Ellis responded that nothing was going on and, as he tried to close the door, Mr. Werner stuck his foot into the Ellises' room to block the door from closing.

16.   Mr. Ellis demanded that Mr. Werner exit the Ellises' room, which Mr. Werner did, and Mr. Ellis closed the door.

17.   Mr. Werner next called police and reported a domestic altercation in the Ellises' room.

18.   Mr. Werner reported to Defendants, apparently omnipotently, that he heard Mr. Ellis slam Mrs. Ellis against a wall.

19.   Mr. Ellis and A.K.E. were watching the movie *Soul Men* at high volume while Mrs. Ellis finished a bath.

20.   *Soul Men* stars Samuel L. Jackson and Bernie Mack, both black men, and the film features no small amount of yelling, cussing and violence.

21.   Mrs. Ellis next began unpacking the Ellises' luggage and putting away groceries .

22.   When questioned later by Sgt. Eatchel, Mr. Werner and his spouse Rachael Werner ("Mrs. Werner") acknowledged they could not make out what was being said in the Ellise's room, and the sounds they heard may have come from the Ellises' television.

23.   Between the time Defendants knocked on the door and physically assaulted and ultimately arrested Mr. Ellis, the following exchange between Defendants and Mr. and Mrs. Ellis took place:

**Sgt. Morzelewski**:   Hey, how's it going?
**Ofcr. Mahoney**:      What's going on?

| | |
|---|---|
| **Mrs. Ellis**: | The guy, I guess across the hall, thought we were yelling. It's the tv set. |
| **Officer**: | Okay. Well, we need to come in and make sure everyone's okay. We— |
| **Mrs. Ellis**: | Just a sec, he's going to come. Oh. [Mrs. Ellis opens the door further as the officers continue forward into the hotel room.] |
| **Ofcr. Mahoney**: | We, we heard that there was a fight going on. |
| **Mrs. Ellis**: | Never was. |
| **Ofcr. Mahoney**: | [Ofcr. Mahoney enters the hotel room.]  Okay. |
| **Mr. Ellis**: | You can't come in here, officer. [Inaudible.] |
| **Ofcr. Mahoney**: | Whenever you talk to this him [sic]. |
| **Mr. Ellis**: | Please step out [as Ofcr. Mahoney and Sgt. Morzelewski continue forward into the hotel room]. |
| **Ofcr. Mahoney**: | Hey! Whenever you talk to him. |
| **Mrs. Ellis**: | He's okay. |
| **Mr. Ellis**: | Step out. Please step out. |
| **Mrs. Ellis**: | Come over here, honey. |
| **Mr. Ellis**: | Step out. |
| **Ofcr. Mahoney**: | I need to talk to you! |
| **Mr. Ellis**: | It's by the law. [Inaudible] officer. |
| **Mrs. Ellis**: | It's okay. |
| **Ofcr. Mahoney**: | I need you to come talk to me. |
| **Mr. Ellis**: | And I need you to step out. |
| **Ofcr. Mahoney**: | I need you to come over here and talk to me. |
| **Mr. Ellis**: | Sir! Please step out. |
| **Ofcr. Mahoney**: | Come over here! |
| **Mr. Ellis**: | This is my home— |
| **Ann Ellis**: | —He's upset because he's— |
| **Ofcr. Mahoney**: | —I need you to stand up [Ofcr. Mahoney gestures for Mrs. Ellis to exit the room and she does] and come talk to me out here then. |
| **Mrs. Ellis**: | You're going to make this more, and they're going to make us leave. |

6

**Ofcr. Mahoney**:     Come talk to me!

**Sgt. Morzelewski**:   Marvin, do you have your ID?

**Mr. Ellis**:     Yes, sir.

**Sgt. Morzelewski**:   Can we get that?

**Mr. Ellis**:     Yes, but can you please step out?

**Sgt. Morzelewski**:   No, we can't.

**Mr. Ellis**:     Sir, you have to.

**Sgt. Morzelewski**:   No, we don't.

**Mr. Ellis**:     I [inaudible] know the law.

**Sgt. Morzelewski**:   So do we.

**Mr. Ellis**:     Okay, then come all the way in.

**Sgt. Morzelewski**:   We're in, we're all that we need to do. We just need to get your ID.

**Mr. Ellis**:     Please do.

**Sgt. Morzelewski**:   Okay. We're—you're just going to get evicted.

**Mr. Ellis**:     Sir [inaudible].

**Sgt. Morzelewski**:   Okay.

**Mr. Ellis**:     [Inaudible].

**Sgt. Morzelewski**:   We just need your ID, boss.

**Ofcr. Mahoney**:     And then we're out of here.

**Mr. Ellis**:     Sir, I'm asking you nicely.

**Sgt. Morzelewski**:   And I'm asking you nicely.

**Mr. Ellis**:     Sir, please step out. I've got a right [inaudible].

**Sgt. Morzelewski**:   We're doing that right now.

**Mr. Ellis**:     Right now, you're violating the law.

**Sgt. Morzelewski**:   No, we're not.

**Mr. Ellis**:     Call your sergeant and ask him.

**Sgt. Morzelewski**:   I am the sergeant.

**Mr. Ellis**:     Then you would know what it is for you to be in here, and you haven't been asking to come in here.

**Sgt. Morzelewski**:   Yeah, don't need to.

7

**Mr. Ellis**:          Yes, you do.

**Sgt. Morzelewski**:   No, we don't.

**Mr. Ellis**:          Sir, you really do.

**Sgt. Morzelewski**:   No, we don't.

**Mr. Ellis**:          Okay, you don't think you do [Marvin Ellis stands up from the chair in the far corner of the hotel room and looks at his phone]?

**Sgt. Morzelewski**:   No.

**Mrs. Ellis**:         Excuse me, sorry [as Mrs. Ellis passes Sgt. Morzelewski and Ofcr. Mahoney and walks back into the room].

**Mr. Ellis**:          Cool. Well, give me the number. [Mrs. Ellis and Mr. Ellis walk past one another as Mr. Ellis walks toward the officers].

**Sgt. Morzelewski**:   We just need your ID.

**Mr. Ellis**:          No, just give me the number.

**Sgt. Eatchel**:       We're here.

**Mr. Ellis**:          Are you the lieutenant? Are you the lieutenant?

**Sgt. Eatchel**:       We're here.

**Mr. Ellis**:          What, are you the lieutenant?

**Sgt. Eatchel**:       We're dealing with this investigation.

**Mr. Ellis**:          No sir, are you the lieutenant?

**Ofcr. Mahoney**:      You need to provide your identification.

**Mr. Ellis**:          I don't have to.

**Sgt. Eatchel**:       You do. You do.

**Mrs. Ellis**:         It was the TV.

**Mr. Ellis**:          Are you the lieutenant?

**Sgt. Morzeleski**:    It's fine [to Mrs. Ellis]. We just need his ID.

**Ofcr. Mahoney**:      You're making a bigger deal than this [Mr. Ellis leans against the wall].

**Sgt. Morzelewski**:   No, we don't have a lieutenant.

**Mr. Ellis**:          No, I just asked you to step out.

**Ofcr. Mahoney**:      We don't have a lieutenant.

| | |
|---|---|
| **Mr. Ellis**: | I just asked you not to be in my room. |
| **Ofcr. Mahoney**: | I just asked you for some ID and to come talk to me. |
| **Mr. Ellis**: | Please get out of my room, please? |
| **Sgt. Morzelewski**: | No. |
| **Mr. Ellis**: | You do have to. |
| **Sgt. Eatchel**: | Okay. If you want us out, then you come out with us. |
| **Mr. Ellis**: | No, I don't have to go out with you. |
| **Sgt. Eatchel**: | Okay, give us your ID. |
| **Mr. Ellis**: | I can talk to you at the door. |
| **Sgt. Eatchel**: | Give us your ID. |
| **Sgt. Morzelewski**: | You're not—we're not talking to you through the door. |
| **Sgt. Morzelewski**: | Don't, don't puff up to me.  [Mr. Ellis had been leaning against the corner of the wall with his left shoulder to relieve the weight on his knees, feet away from Sgt. Morzelewski, from 00:19:48 until Sgt. Morzelewski made this accusation at 00:19:53 in the body cam video]. |
| **Sgt. Eatchel**: | If you're refusing to give your ID. |
| **Mr. Ellis**: | What are you talking about? |
| **Sgt. Morzelewski**: | You're all gettin' up in my face. |
| **Mr. Ellis**: | I'm three feet away from you. |
| **Sgt. Morzelewski**: | You're not three feet away from me. |
| **Mr. Ellis**: | Oh, here, let me record it so we can see it on tape, for real [Mr. Ellis looks down at his cell phone]. |
| **Sgt. Morzelewski**: | It's all right here, man [Sgt. Morzelewski gestures toward his body cam]. |
| **Mr. Ellis**: | No, I'll record it [Mr. Ellis takes a step back from Sgt. Morzelewski]. |
| **Mrs. Ellis**: | He's not, he's not doing anything to you guys. |
| **Mr. Ellis**: | You walk out there with them. I'm not going out and talking to these idiots. |
| **Mrs. Ellis**: | I just did. |

24.  After this exchange, captured by Defendants' body-worn cameras, and without warning, Sgt. Morzelewski bent over at the waist, leaned forward, reached several feet toward Mr. Ellis, and grabbed Mr. Ellis's arm near the wrist.

25.  Joined by Ofcr. Mahoney, Sgt. Morzelewski yanked Mr. Ellis out of his home into the hotel hallway.

26.  As Sgt. Morzelewski and Ofcr. Mahoney pulled on Mr. Ellis, Mr. Ellis drew his arms toward his body.

27.  Prior to Sgt. Morzelewski grabbing Mr. Ellis, no Defendant told Mr. Ellis he was being placed under arrest.

28.  Prior to Sgt. Morzelewski grabbing Mr. Ellis, no Defendant told Mr. Ellis he was being detained.

29.  Prior to Sgt. Morzelewski grabbing Mr. Ellis, no Defendant told Mr. Ellis to put his arms behind his back.

30.  Prior to Sgt. Morzelewski grabbing Mr. Ellis, no Defendant told Mr. Ellis why he was being grabbed.

31.  Prior to Sgt. Morzelewski grabbing Mr. Ellis, no Defendant requested that Mr. Ellis disclose his name.

32.  Prior to Sgt. Morzelewski grabbing Mr. Ellis, no Defendant requested that Mr. Ellis disclose his address.

33.  Prior to Sgt. Morzelewski grabbing Mr. Ellis, Defendants variously requested Mr. Ellis's "ID" and "identification."

34.  Prior to Sgt. Morzelewski grabbing Mr. Ellis, no Defendant requested or demanded A.K.E. exit the hotel room.

10

35.    Prior to Sgt. Morzelewski grabbing Mr. Ellis, no Defendant requested or demanded Mrs. Ellis not re-enter the hotel room after she finished speaking with Sgt. Eatchel in the hallway.

36.    Prior to Sgt. Morzelewski grabbing Mr. Ellis, no Defendant did or said anything to prevent Mrs. Ellis from re-entering the hotel room.

37.    Prior to Defendants entering the hotel room and prior to Sgt. Morzelewski and Ofcr. Mahoney grabbing Mr. Ellis, no Defendant questioned Mr. Ellis or A.K.E. about the complaint that brought Defendants to the Ellises' hotel room.

38.    Prior to Defendants entering the hotel room and prior to Sgt. Morzelewski and Ofcr. Mahoney grabbing Mr. Ellis, no Defendant questioned the neighbors who lodged the complaint, or any other neighbors.

39.    Sgt. Morzelewski simply grabbed Mr. Ellis and, with Ofcr. Mahoney's assistance, the two officers physically yanked Mr. Ellis out of the hotel room.

40.    When Sgt. Morzelewski grabbed Mr. Ellis, Mr. Ellis was holding his wallet in his left hand and his cell phone in his right hand.

41.    Mrs. Ellis and A.K.E. looked on in terror as Sgt. Eatchel then electrocuted Mr. Ellis with a handheld conducted electrical weapon.

42.    Mr. Ellis cried out in pain when Sgt. Eatchel electrocuted him with the handheld conducted electrical weapon.

43.    Defendants next handcuffed Mr. Ellis and forcibly took him face-first to the ground in the hallway.

44.    Sgt. Morzelewski bared his teeth at points throughout the physical encounter between Defendants and Mr. Ellis.

11

45.    As Sgt. Morzelewski forced Mr. Ellis to the ground, and with Mr. Ellis's hands and arms behind his back, Sgt. Morzelewski and Ofcr. Mahoney wrenched Mr. Ellis's arms upward toward Mr. Ellis's head.

46.    With Mr. Ellis handcuffed behind his back, and lying face-first on the ground, Sgt. Morzelewski again wrenched Mr. Ellis's arms upward toward Mr. Ellis's head while repeating "Stop resisting!"

47.    The pain from having Sgt. Morzelewski and Ofcr. Mahoney wrench his handcuffed arms behind his head was excruciating for Mr. Ellis.

48.    With Mr. Ellis splayed face-first and handcuffed on the ground, Sgt. Morzelewski then drove his knee into Mr. Ellis's ribs.

49.    Throughout the attack, Mr. and Mrs. Ellis stated repeatedly to Defendants that Mr. Ellis had knee surgery days before and knee-replacement surgery several months before.

50.    A.K.E. looked on and cried out, asking Defendants what his father did and begging Defendants to leave Mr. Ellis alone.

51.    *After* yanking Mr. Ellis out of his home, a Defendant stated to Mr. Ellis that he was going to jail.

52.    During Defendants' arrest of Mr. Ellis, one of Mr. Ellis's shoes came off.

53.    Sgt. Morzelewski ordered Mr. Ellis to put his shoe back on.

54.    Handcuffed, Mr. Ellis responded that he could not put his shoe back on, and requested Defendants put the shoe back on.

55.    Defendants declined to put Mr. Ellis's shoe back on and they ushered him away to the hotel elevator.

12

56.   Mr. Ellis's pants came down during the attack, partially exposing his backside during the arrest.

57.   Due to excruciating pain in his shoulders and recently-repaired knees from being manhandled by Defendants, Mr. Ellis was concerned about his physical health.

58.   Mr. Ellis requested medical assistance to assess his physical condition.

59.   Ofcr. Mahoney told responding medical personnel that Mr. Ellis "wouldn't talk to us, he wouldn't give us ID, so we had to take him down."

60.   Emergency medical personnel assessed and transported Mr. Ellis by ambulance, handcuffed all-the-while, to a nearby hospital, where he was examined and ultimately released to be taken to jail in a wheelchair.

61.   Defendants left Mr. Ellis handcuffed behind his back, including for more than 100 minutes between his transport to the hospital on a gurney and through his medical examination in a hospital bed.

62.   Mr. Ellis is a large man, weighing approximately 270 pounds, thus laying on his handcuffed wrists for upwards of an hour was excruciating.

63.   Upon information and belief, Defendants were trained to double-cuff a man of Mr. Ellis's size to alleviate the pain and discomfort of standard one-size-fits-all handcuffs.

64.   Upon information and belief, Defendants opted, out of malice, to not double-cuff Mr. Ellis as retribution for Mr. Ellis's verbal remonstrations with, and protests to, Defendants.

65.   Upon information and belief, Defendants were trained to cuff in-custody patients to hospital-bed rails to alleviate the pain and discomfort of laying with full body weight on handcuffed wrists.

66. Upon information and belief, Defendants opted, out of malice, to not cuff Mr. Ellis to the hospital bed until requested to do so by medical personnel as retribution for Mr. Ellis's verbal remonstrations with, and protests to, Defendants.

67. While transferring Mr. Ellis from a wheelchair to a police vehicle at the hospital, Ofcr. Mahoney admitted to Mr. Ellis that Mr. Ellis would not have been arrested had he given Defendants his identification.

68. Upon information and belief, jail staff declined to hold Mr. Ellis due to his medical condition, and released him on his own recognizance after conducting a book and release.

69. Defendants lacked statutory or constitutional authority to demand Mr. Ellis's name or address while he was in a non-public place – here, his home.

70. Defendants did not request or demand Mr. Ellis's name or address prior to entering his home, prior to grabbing him, or prior to handcuffing him.

71. Defendants repeatedly requested Mr. Ellis's "identification" and "ID", respectively.

72. Defendants lacked statutory or constitutional authority to demand Mr. Ellis's state-issued "identification", and Mr. Ellis had no legal obligation to comply with any such request or demand.

73. Defendants lacked any need for Mr. Ellis's identification, inasmuch as Defendants knew his identity prior to their warrantless entry into the Ellises' home.

74. In a written police report, Ofcr. Mahoney falsely alleged at least all of the following:

    a. Mrs. Ellis "appeared to have recent injuries to her face";

    b. Mrs. Ellis "allowed me to enter the room" and "allowed me into the room";

    c. Mr. Ellis was "refusing to answer the question of who [he] is";

    d. Mr. Ellis said "he would talk to us through the door";

    e.   "During all of this Marvin refused to identify himself to us";

    f.   Mr. Ellis "was approximately 1-2 feet away from Sgt. Morzelewski";

    g.   "It was clear at this time that Marvin was not going to cooperate with our

           investigation into the domestic violence and was refusing to identify himself".

75.    In their police reports, one or more Defendants falsely alleged Mr. Ellis flailed his arms.

76.    In their police reports, one or more Defendants falsely alleged Mr. Ellis resisted arrest.

77.    In his police report, Sgt. Eatchel falsely alleged Mr. Ellis swung his arms to get away from Defendants.

78.    No Defendant stated to Mr. Ellis that he was under arrest prior to Sgt. Morzelewski grabbing Mr. Ellis's arm.

79.    No Defendant stated to Mr. Ellis that he was under arrest prior to Defendants yanking Mr. Ellis out of his home, electrocuting him, forcing him face-first to the ground, and wrenching his handcuffed arms toward his head.

80.    In his report, Sgt. Eatchel falsely alleged he did not deploy his conducted electrical weapon.

81.    In his report, Sgt. Morzelewski fabricated the allegation that Mr. Ellis "puff[ed] up" to him.

82.    Upon information and belief, Sgt. Morzelewski fabricated the allegation that Mr. Ellis "puff[ed] up" to him as a pretext to attack and arrest Mr. Ellis.

83.    Upon information and belief, Defendants attacked and arrested Mr. Ellis in retaliation for Mr. Ellis's verbal remonstrations with the officers, verbal protests of his treatment, verbal

suggestion that he would video-record the encounter, and verbal insistence that Defendants recognize and abide by the Ellises' state and federal legal and constitutional rights.

84.   As a result of Defendants' conduct, Plaintiffs were evicted from their home.

85.   Based on Defendants' unfounded allegations, the Salt Lake County District Attorney's Office charged Mr. Ellis by information with Assault Against a Peace Officer, a class A misdemeanor under Utah Code subsection 76-5-102.4(2); Interference with Arresting Officer, a class B misdemeanor under Utah Code Section 76-8-305; and Failure to Disclose Identity, a class B misdemeanor under Utah Code Section 76-8-301.5.

86.   Mr. Ellis hired attorney Stewart Gollan (since deceased) to defend against the resulting criminal charges.

87.   On or about September 9, 2019, Utah's Third District Court dismissed without prejudice the charges against Mr. Ellis for failure of Defendants to appear for a scheduled preliminary hearing.

88.   On or about September 16, 2019, the State refiled the same charges against Mr. Ellis in Third District Court.

89.   Mr. Ellis was again required to defend against identical charges.

90.   Mr. Ellis again hired an attorney (Plaintiffs' counsel R. Shane Johnson) to defend against the charges for a second time.

91.   On March 18, 2021, Utah's Third District Court *again* dismissed without prejudice the charges against Mr. Ellis for failure of Defendants *again* to appear for a scheduled preliminary hearing.

92.    Upon information and belief, Deputy District Attorney Roger Blaylock issued subpoenas to each Defendant commanding them to appear at the March 18, 2021 preliminary hearing, and Defendants conferred amongst themselves, and agreed to disregard the subpoenas.

93.    The allegations that brought Defendants to Plaintiffs' home were unfounded and lacked probable cause.

94.    Mr. Ellis has never been charged with an offense related to the allegations that brought Defendants to Plaintiffs' home.

95.    Moreover, no Plaintiff was ever charged with a domestic violence offense based on the allegations that brought Defendants to the Ellises' home on December 9, 2018.

96.    As a result of Defendants' actions, Plaintiffs' suffered violation of their rights under the First, Fourth, Fifth, Sixth and Fourteenth amendments to the United States Constitution, and they are entitled to declaratory relief, injunctive relief restraining Defendants from acting similarly in the future, all special and general damages resulting as a direct and proximate result of Defendants' violations of the Ellises' rights under the First, Fourth, Fifth, Sixth and Fourteenth amendments of the United States Constitution, costs of litigation, attorney's fees, and all other relief the Court deems just and equitable.

### FIRST CAUSE OF ACTION
**UNCONSTITUTIONAL WARRANTLESS SEARCH, DETENTION, ARREST & FAILURE TO INTERVENE**
(Under 42 U.S.C. § 1983 in violation of the Fourth and Fourteenth Amendments against Defendants Sgt. Morzelewski, Ofcr. Mahoney, and Sgt. Eatchel)

97.    Plaintiffs incorporate by reference and restate all preceding allegations.

98.    The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures of persons, houses, papers, and effects, and the Fourth Amendment is incorporated against the states by the Fourteenth Amendment.

99.   Absent a warrant or a warrant exception, the Fourth Amendment prohibits police entry into a person's home.

100.   A failure to intervene claim makes an officer liable for preventable harm caused by other officers if he or she has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official, and there was a reasonable opportunity to intervene to prevent the harm from occurring.

101.   Defendants failed to obtain a warrant justifying their entry into the Ellises' hotel room.

102.   No exception to the warrant requirement justified Defendants' entry into the Ellises' hotel room.

103.   It is Defendants' burden to show a warrantless entry into the Ellises' hotel room was justified by a warrant or a warrant exception.

104.   Defendants entered the Ellises' hotel room.

105.   Defendants were not invited into the Ellises' hotel room.

106.   Defendants were investigating a complaint alleging sounds believed to be an argument and a body colliding with a wall.

107.   Defendants remained in Plaintiffs' home despite Mr. Ellis's repeated requests that they return to the threshold.

108.   Defendants detained the Ellises inside their home.

109.   Defendants physically grabbed Mr. Ellis with no warning to him.

110.   Defendants physically removed Mr. Ellis from the hotel room.

111.   Defendants arrested Mr. Ellis without probable cause to believe he had committed an offense.

18

112. Defendant Ofcr. Mahoney took Mr. Ellis to jail.

113. Notably, Defendants never cited, charged, nor referred Mr. Ellis or any other Plaintiff for prosecution of any offense that Defendants were summoned to investigate.

114. Defendants have not articulated probable cause and exigent circumstances that would justify their entry into the Ellises' hotel room without a warrant or warrant exception.

115. Defendants lacked reasonable suspicion or probable cause to believe Mr. Ellis committed the offenses of assault against a peace officer, interference with arresting officer, or failure to disclose identity.

116. Defendants, while acting under color of state law, violated the Ellises' clearly established rights under the Fourth Amendment to be free from unreasonable searches and seizures of their persons, houses, papers and effects.

117. Defendants Sgt. Morzelewski, Ofcr. Mahoney and Sgt. Eatchel had the duty and opportunity to intervene to prevent the unlawful and unconstitutional: entry and search of the Ellises' home; detention of the Ellises; and brutal attack and arrest of Mr. Ellis; but they failed to intervene in violation of Ellises' rights to be free from unreasonable searches and seizures.

118. By unconstitutionally entering the Ellises' home, searching the Ellises' home, detaining the Ellises, brutally attacking and arresting Mr. Ellis, and by failing to intervene and prevent the unconstitutional entry into the Ellises' home, search of the Ellises' home, detention of the Ellises, brutal attack and arrest of Mr. Ellis, Defendants violated the Ellises' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

119. Accordingly, the Ellises' request relief in the form of a declaration that Defendants violated the Ellises' rights under the Fourth Amendment, injunctive relief restraining Defendants from acting similarly in the future, all special and general damages resulting as a direct and

proximate result of Defendants' violations of the Ellises' Fourth Amendment rights, costs,

attorney's fees, and all other relief the Court deems just and equitable.

**SECOND CAUSE OF ACTION**
**SUCCESSFUL RETALIATORY INDUCEMENT TO PROSECUTE & FAILURE TO INTERVENE**
(Under 42 U.S.C. § 1983 in violation of the First, Fourth, Fifth, and Fourteenth Amendments
against Defendants Sgt. Morzelewski, Ofcr. Mahoney, and Sgt. Eatchel)

120.   Plaintiffs incorporate by reference and restate all preceding allegations.

121.   Successful retaliatory inducement to prosecute is proven when a person engages in

constitutionally protected activity, the defendant caused the person an injury that would chill a

person of ordinary firmness from continuing to engage in the protected activity, and the

defendant's actions were substantially motivated as a response to the protected conduct.

122.   A failure to intervene claim makes an officer liable for preventable harm caused by

other officers if he or she has reason to know: (1) that excessive force is being used, (2) that a

citizens has been unjustifiably arrested; or (3) that any constitutional violation has been

committed by a law enforcement official, and there was a reasonable opportunity to intervene to

prevent the harm from occurring.

123.   Marvin Ellis engaged in constitutionally protected activity under the First, Fourth, Fifth

and Fourteenth Amendments by verbally protesting his treatment by Defendants, requesting

Defendants retreat to the threshold of his home, declining to submit to Defendants'

unconstitutional and illegal requests or demands, questioning whether Defendants were violating

his civil rights, attempting to video-record Defendants, and declining to incriminate himself.

124.   The rights to verbally protest police conduct, to verbally remonstrate with police, to

decline to submit to unconstitutional and illegal police requests, to video-record public officials

in one's home, and to decline to provide evidence against oneself, were clearly established by the

time of the events at issue here.

20

125.   Defendants Sgt. Morzelewski, Ofcr. Mahoney and Sgt. Eatchel induced Mr. Ellis's prosecution for Assault Against a Peace Officer, a class A misdemeanor under Utah Code subsection 76-5-102.4(2); Interference with Arresting Officer, a class B misdemeanor under Utah Code Section 76-8-305; and Failure to Disclose Identity, a class B misdemeanor under Utah Code Section 76-8-301.5.

126.   Defendants induced Mr. Ellis's prosecution by submitting their reports and other statements, including but not limited to a probable cause statement, to the Salt Lake County District Attorney's Office for screening of charges against Mr. Ellis.

127.   All of the criminal charges referred for screening against Mr. Ellis lacked probable cause.

128.   The prosecutions terminated in Mr. Ellis's favor with dismissals of all charges in Utah's Third District Court Case No. 191400758 on September 9, 2019, and in Case No. 191403953 on May 18, 2021.

129.   The charges against Mr. Ellis were dismissed *twice*, because Defendants failed to appear on subpoenas that would have required them to justify, under oath, their grounds for entering the Ellises' home without a warrant or a warrant exception, detaining the Ellises, and then physically attacking Mr. Ellis without cause, warning or explanation, and arresting Mr. Ellis for instinctually flinching while he was being brutalized.

130.   A reasonable person would be chilled from exercising the rights Mr. Ellis exercised.

131.   Mr. Ellis exercised his right to verbally remonstrate with police.

132.   Mr. Ellis exercised his right to decline to provide state-issued identification in his home.

133.   Mr. Ellis nonetheless agreed to provide state-issued identification so long as Defendants would retreat to the threshold of Mr. Ellis's home.

134.   Mr. Ellis exercised his right to video-record police in his home.

135.   Mr. Ellis exercised his right to protest an unreasonable search and seizure in his home.

136.   Mr. Ellis exercised his right to decline to incriminate himself by declining to be questioned by Defendants.

137.   Mr. Ellis nonetheless agreed to answer Defendant's questions so long as Defendants would retreat to the threshold of Mr. Ellis's home.

138.   Defendants responded to Mr. Ellis's exercise of his rights by physically attacking him, arresting him, and referring him for prosecution for several criminal offenses related to Mr. Ellis's constitutionally protected response to Defendants' unlawful entry of his home, unlawful demands that he produce identification, unlawful demand that he speak to officers, and unlawful and unwarned physical attack on Mr. Ellis.

139.   Defendants Sgt. Morzelewski, Ofcr. Mahoney and Sgt. Eatchel had the duty and opportunity to intervene to prevent the unlawful and unconstitutional retaliatory inducement to prosecute Mr. Ellis, yet they failed to intervene to protest or prevent the retaliatory inducement to prosecute Mr. Ellis.

140.   By inducing the prosecution of Mr. Ellis in retaliation for his exercise of constitutional rights, and by failing to intervene and prevent the retaliatory prosecution, Defendants violated Mr. Ellis's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

141.   Accordingly, the Ellises request relief in the form of a declaration that Defendants violated Mr. Ellis's rights under the First, Fourth, Fifth, and Fourteenth amendments; all damages

directly and proximately resulting from these Defendants' violations of Mr. Ellis's articulated

rights; costs; attorney's fees; and all other relief the Court deems just and equitable.

**THIRD CAUSE OF ACTION**
**EXCESSIVE FORCE & FAILURE TO INTERVENE**
(Under 42 U.S.C. § 1983 in violation of the Fourth & Fourteenth Amendments against
Defendants Sgt. Morzelewski, Ofcr. Mahoney, and Sgt. Eatchel)

142.    Plaintiffs incorporate by reference and restate all preceding allegations.

143.    Mr. Ellis enjoyed the right to be free from excessive force under the Fourth and

Fourteenth Amendments.

144.    Excessive force broadly prohibits the use of unreasonable physical force by police

officers.

145.    More narrowly, the non-exclusive factors courts consider in determining the

reasonableness of force include the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether the suspect is actively

resisting arrest or attempting to evade arrest by flight.

146.    A failure to intervene claim makes an officer liable for preventable harm caused by

other officers if he or she has reason to know: (1) that excessive force is being used, (2) that a

citizen has been unjustifiably arrested; or (3) that any constitutional violation has been

committed by a law enforcement official, and there was a reasonable opportunity to intervene to

prevent the harm from occurring.

147.    The offense at issue here, at minimum, was a noise complaint and, at maximum, was

an alleged misdemeanor domestic disturbance involving no weapons, and which had obviously

subsided by the time Defendants arrived minutes later.

148.    Defendants arrived at the Ellises' hotel room door and contacted Mrs. Ellis at the front door of the third-floor room, while Mr. Ellis sat in a chair in the rear corner of the room approximately 20 feet away.

149.    The Ellises' hotel room had a single entrance.

150.    Mr. Ellis gave no hint of a risk of flight by his actions, and no such supposition could adhere with three officers posted inside the room and blocking the only egress from the third-floor room.

151.    Defendants had no reasonable belief that Mr. Ellis posed a risk of harm to officers, to Mrs. Ellis, or to A.K.E.

152.    Defendants permitted Mrs. Ellis to re-enter the hotel room after being questioned by Sgt. Eatchel.

153.    Defendants had no reasonable belief that Mr. Ellis posed a risk of harm to Mrs. Ellis or A.K.E., inasmuch as they permitted Mrs. Ellis and A.K.E. to remain in the room with Mr. Ellis.

154.    Defendants lacked a warrant to justify their entry into the Ellises' hotel room.

155.    Defendants lacked a warrant exception to justify their entry into the Ellise's hotel room.

156.    Defendants lacked probable cause to believe Mr. Ellis had committed a crime prior to Defendants' arrival at the front door of the Ellises' hotel room.

157.    In the two-plus years since the incident, Defendants have not alleged they had probable cause to arrest Mr. Ellis for any conduct that occurred prior to Defendants' unwarranted entry and brutal physical attack on Mr. Ellis inside his home, then a hotel room.

158.    Defendants lacked legal or constitutional authority to demand Mr. Ellis's identification.

159.    Defendants lacked legal or constitutional authority to demand Mr. Ellis come to them.

160. Defendants lacked legal or constitutional authority to demand Mr. Ellis speak to them.

161. Defendants lacked legal or constitutional authority to physically touch Mr. Ellis.

162. Defendants lacked legal or constitutional authority to brutally attack Mr. Ellis.

163. Defendants lacked legal or constitutional authority to use the type or amount of force used to detain and arrest Mr. Ellis, even if they did have reasonable suspicion to detain Mr. Ellis or probable cause to arrest Mr. Ellis.

164. That is, Defendants' use of force was unprovoked, unannounced, and grossly disproportional to any perceived necessity.

165. Sgt. Morzelewski simply grabbed Mr. Ellis and, with Ofcr. Mahoney's assistance, physically yanked Mr. Ellis out of the hotel room – Mr. Ellis's home.

166. Mrs. Ellis and A.K.E. looked on in terror as Sgt. Eatchel then electrocuted Mr. Ellis with a handheld conducted electrical weapon.

167. Mr. Ellis cried out in pain after Sgt. Eatchel electrocuted him with the handheld conducted electrical weapon.

168. Defendants next handcuffed Mr. Ellis and forcibly took him face-first to the ground in the hallway, with Sgt. Morzelewski baring his teeth at points throughout.

169. While taking Mr. Ellis to the ground, and again after Mr. Ellis was handcuffed and lying face-first on the ground, Sgt. Morzelewski wrenched Mr. Ellis's arms upward toward Mr. Ellis's head.

170. The pain from having Sgt. Morzelewski wrench his handcuffed arms behind his head was excruciating.

171. Throughout the attack, Mr. and Mrs. Ellis stated repeatedly to Defendants that Mr. Ellis has bad knees and recently had knee surgery.

25

172.   *After* yanking Mr. Ellis out of his home, a Defendant stated to Mr. Ellis that he was going to jail.

173.   During Defendants' unannounced arrest of Mr. Ellis, Mr. Ellis's shoe came off.

174.   Sgt. Morzelewski ordered Mr. Ellis to put his shoe back on.

175.   Handcuffed and hobbling, Mr. Ellis responded that he could not put his shoe back on, and requested Defendants put the shoe back on.

176.   Defendants declined to put Mr. Ellis's shoe back on and they ushered him away to the hotel elevator.

177.   Mr. Ellis's pants came down during the attack, partially exposing his backside during the arrest.

178.   Due to excruciating pain from being manhandled by Defendants, Mr. Ellis requested medical assistance to assess his shoulders and recently reconstructed knees.

179.   Emergency medical personnel responded, and transported Mr. Ellis, handcuffed all-the-while, to a nearby hospital, where he was examined and ultimately released to be taken to jail.

180.   Defendant Ofcr. Mahone left Mr. Ellis handcuffed behind his back throughout his transport to the hospital while lying on his back on a gurney, and for almost an hour lying on his back in a hospital bed.

181.   Mr. Ellis is a large man, weighing 270 pounds, and at no time did a Defendant double-cuff Mr. Ellis during his detention, a standard practice to ease the pain and minimize injury to much-larger-than-average arrestees.

182.   While transferring Mr. Ellis from a wheelchair to a police vehicle at the hospital, Ofcr. Mahoney admitted to Mr. Ellis that he would not have been arrested had he given Defendants his identification.

26

183.   Upon information and belief, jail staff declined to hold Mr. Ellis due to his medical condition, and the jail released Mr. Ellis on his own recognizance after conducting a book and release.

184.   Defendants Sgt. Morzelewski, Ofcr. Mahoney and Sgt. Eatchel had the duty and opportunity to intervene to prevent the use of unreasonable and excessive force against Mr. Ellis, yet they failed to intervene, to protest, or to take any action to prevent the use of unreasonable and excessive force against Mr. Ellis.

185.   By using unreasonable and excessive force, and by failing to intervene and prevent the use of unreasonable and excessive force, Defendants violated Mr. Ellis's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

186.   Accordingly, the Ellises request relief in the form of a declaration that Defendants violated Mr. Ellis's rights under the Fourth and Fourteenth amendments; all damages directly and proximately resulting from these Defendants' violations of Mr. Ellis's articulated rights; costs; attorney's fees; and all other relief the Court deems just and equitable.

### FOURTH CAUSE OF ACTION
#### CONSPIRACY TO DEPRIVE CIVIL RIGHTS AND FAILURE TO INTERVENE
(Under 42 U.S.C. §§ 1985 and 1986 in violation of the First, Fourth, Fifth, Sixth & Fourteenth Amendments against Defendants Sgt. Morzelewski, Ofcr. Mahoney, and Sgt. Eatchel)

187.   Plaintiffs incorporate by reference and restate all preceding allegations.

188.   Upon information and belief, in violation of 42 U.S.C. § 1985(2), Defendants conspired for the purpose of impeding, hindering, obstructing, or defeating the due course of justice in Mr. Ellis's *multiple* criminal prosecutions for the same alleged offenses, and they did so with intent to deny Mr. Ellis equal protection of the laws when he attempted to exercise and enforce his trial rights during subsequent prosecutions.

189.   Upon information and belief, in violation of 42 U.S.C. § 1986, Defendants had the knowledge and opportunity to intervene to prevent various conspiracies to deprive Mr. Ellis of his constitutional rights, and Defendants neglected or refused to do so.

190.   Upon information and belief, Defendants conspired to make false allegations against Mr. Ellis in their police reports to cover up their unconstitutional entry into the Ellises' hotel room; detention of the Ellises; unprovoked and unwarned brutal attack of Mr. Ellis; unjustified arrest of Mr. Ellis; and excessive force used against Mr. Ellis; and to induce Mr. Ellis's wrongful prosecution.

191.   Upon information and belief, Defendants conspired to falsely deny the existence of and withhold video footage from their body-worn cameras, leading the prosecutor in the first prosecution of Mr. Ellis to falsely deny that any such video existed, only for Defendants to later acknowledge and provide a single video, and later again acknowledge and provide five videos that had been disavowed and withheld with the intent to deprive Mr. Ellis of his right to discovery of all exculpatory evidence in his defense.

192.   Upon information and belief, Defendants conspired to absent themselves from two scheduled preliminary hearings – despite being subpoenaed to those hearings – in successive prosecutions in order to avoid justifying their unconstitutional conduct under penalty of perjury, and with the intent to deprive Mr. Ellis of his right to confront them under oath.

193.   By conspiring to violate Plaintiffs' constitutional rights, and by failing to intervene to prevent the deprivation of Plaintiffs' rights, Defendants are liable to Plaintiffs for relief under 42 U.S.C. §§1985 and 1986.

194.   Accordingly, the Ellises request relief in the form of a declaration that Defendants violated Mr. Ellis's rights under the First, Fourth, Fifth, Sixth & Fourteenth amendments; all

damages directly and proximately resulting from these Defendants' violations of Mr. Ellis's articulated rights; costs; attorney's fees; and all other relief the Court deems just and equitable.

### PRAYER FOR RELIEF

WHEREFORE, the Ellises pray that this Court enter judgment against Defendants as follows:

1.   A declaration that Defendants' conduct violated the Ellises' rights under the United States Constitution and under 42 U.S.C. §§ 1983, 1985, and 1986;

2.   Affirmative relief, ordering that all arrest, booking, and court filings in the underlying criminal matters be destroyed or sealed and deleted from any state or federal database;

3.   General, special, and consequential damages in an amount to be determined at trial, including for violation of Plaintiffs' constitutional rights, pain and suffering, humiliation, terror, emotional distress, Plaintiff's eviction from their home, medical expenses, etc.;

4.   Punitive damages on all claims allowed by law, in an amount to be determined at trial;

5.   Reasonable attorney fees and the costs of litigation under 42 U.S.C. § 1988; and

6.   All other relief this Court deems just and equitable.

RESPECTFULLY SUBMITTED on this 27th day of October, 2021.


 /s/ R. Shane Johnson
R. Shane Johnson
*Attorney for Plaintiffs*