IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARVIN BARNES ELLIS and ANN JEANETTE MARIE ELLIS, individuals, and A.K.E., a minor,<br><br><br>Plaintiffs,<br><br><br>vs.<br><br><br>DANIEL MORZELEWSKI, KYLE MAHONEY, KEN EATCHEL, and ERNEST ROBERT RUSSO, individually and in their official capacities as Cottonwood Heights Police Department Employees; JAMES HANSEN; MELISSA MELLOR; HANSEN LAW, P.C.; CITY OF COTTONWOOD HEIGHTS; CITY OF HOLLADAY, and DOES 1-20,<br><br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br><br>Case No. 2:21-cv-639-TC |

This civil rights case arises out of the 2018 arrest and ongoing criminal prosecution of

Plaintiff Marvin Barnes Ellis in Utah state court.  Mr. Ellis, his wife Ann Jeanette Marie Ellis,

and his minor child A.K.E. claim that the City of Cottonwood Heights and its police officers (the

Cottonwood Heights Defendants), the City of Holladay, and the cities' prosecutors violated their

constitutional rights.  In their seven causes of action, Plaintiffs allege unlawful entry into the

Ellises' extended-stay hotel room, unlawful detention and arrest of Mr. Ellis, use of excessive

1

force against Mr. Ellis, violation of their due process rights, and vindictive prosecution of Mr. Ellis in retaliation for filing this civil rights suit.

The Defendants have filed motions under Federal Rule of Civil Procedure 12(b)(1) asserting that the abstention doctrine set forth in Younger v. Harris[1] requires the court to dismiss six of the seven claims for equitable relief and stay the corresponding claims for monetary damages pending resolution of the state criminal proceeding. As for the claim unrelated to Younger abstention—excessive force—they ask the court to use its inherent authority to stay for reasons of fairness and judicial efficiency. Also, as the City of Holladay notes in its motion to dismiss, the court must address the more fundamental jurisdictional question of standing.

The court finds, for the reasons set forth below, that Mrs. Ellis and A.K.E. only have standing to assert claims related to the entry into their living space, and that Mr. Ellis does not have standing to assert his due process claim against Holladay. As for the abstention question, Younger requires the court to abstain from exercising jurisdiction over all but the excessive force claim, which the court independently stays in the interest of judicial economy and fairness.

## FACTUAL BACKGROUND[2]

Plaintiffs' claims arise from events that began on December 9, 2018, when Cottonwood Heights police officers Daniel Morzelewski, Kyle Mahoney, and Ken Eatchel (the Officers) responded to a report of a domestic disturbance at an extended stay hotel in Cottonwood Heights where the Ellises were staying. After Mr. and Mrs. Ellis and their child had settled into their

---

[1] 401 U.S. 37 (1971).

[2] The court takes the facts from Plaintiffs' Amended Complaint (ECF No. 21) and evidence provided by the Cottonwood Heights Defendants. Because the motions raise a jurisdictional question, the court may consider matters outside the pleadings. Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995), abrogated on other grounds by Cent. Green Co. v. United States, 531 U.S. 425, 437 (2001) ("A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).").

new living space, a neighbor called the police and reported a domestic altercation in the Ellises'

room.  The Officers responded to the call.  They knocked on the door of the Ellises' room and

entered the room without a warrant or invitation.  While they asked Mr. Ellis for his

identification, he repeatedly asked them to step out of the room.  According to Plaintiffs,

Sergeant Morzelewski did not tell Mr. Ellis he was being detained or arrested and instead

"grabbed Mr. Ellis and, with [Officer] Mahoney's assistance, … physically yanked Mr. Ellis out

of the hotel room."  (Am. Compl. ¶¶ 32–35, 44, ECF No. 21.)

The Ellises allege the Officers unlawfully removed Mr. Ellis from the room, tased him,

handcuffed him, and forcibly placed him face down on the ground in the hallway, where the

Officers "wrenched his handcuffed arms behind his head" and Sergeant Morzelewski "drove his

knee into Mr. Ellis's ribs." (Id. ¶¶ 44–53.)

Emergency medical personnel took Mr. Ellis to a nearby hospital; later he was taken to

jail.  (Id. ¶ 65.)  The Salt Lake County District Attorney's Office then charged him in the State of

Utah's Third District Court with three misdemeanor counts: assault against a peace officer,

interference with an arresting officer, and failure to disclose identity. (Id. ¶ 92.)

On September 9, 2019, the district court judge dismissed the case without prejudice for

the Officers' failure to appear at the preliminary hearing. (Id. ¶ 94.)  He stated that he would

dismiss a subsequent prosecution with prejudice if the officers did not appear at the second

preliminary hearing.

According to the Cottonwood Heights Defendants, Officer Mahoney had actually

appeared to testify on behalf of the Officers (as allowed at a preliminary hearing) and was

waiting in the hall.  For some unexplained reason, no one called him into the courtroom. GPS

data confirms that Officer Mahoney was at the courthouse at the hearing time. (Decl. of Kyle Mahoney ¶¶ 2–12, ECF No. 27-1; Mahoney GPS Data at 02:24–02:54, Ex. A to Mahoney Decl.)

A week later, on September 16, 2019, the District Attorney's Office refiled the charges in Third District Court.  On March 18, 2021, a different district court judge dismissed the charges without prejudice for the Officers' failure to appear for a scheduled preliminary hearing (although Defendants suggest that Sergeant Morzelewski was at the courthouse at that time). (See Cottonwood Heights' Mot. to Dismiss and Stay at p. 5 ¶ 15, ECF No. 27 ("Cottonwood Heights Motion").)  Plaintiffs' counsel, who was not involved in the District Attorney's first prosecution, asserts that if he had been aware of the first district court judge's warning of dismissal with prejudice, he would have asked for dismissal with prejudice in the second prosecution and, presumably, the second district court judge would have granted the request.

On October 27, 2021, the Ellises filed their initial civil rights complaint in this court.  Six days later, on November 2, 2021, Cottonwood Heights, through its prosecutors Hansen Law, P.C., James Hansen, and Melissa Mellor (the Prosecutor Defendants), filed four misdemeanor charges against Mr. Ellis in Holladay Justice Court: attempted assault on a peace officer, interference with an arresting officer, failure to disclose identity, and disorderly conduct.

The Prosecutor Defendants are private attorneys who provide prosecution services to Cottonwood Heights through two interrelated contracts: (1) an independent contractor agreement through which the City of Holladay hired them to prosecute cases, and (2) Holladay's agreement with Cottonwood Heights to share court services, including the Prosecutor Defendants' services. Holladay did not file any charges against Mr. Ellis and is not involved in any portion of the justice court criminal matter.  The Prosecutor Defendants filed the charges on behalf of

Cottonwood Heights based on events occurring in Cottonwood Heights and an arrest made by Cottonwood Heights police officers.

Plaintiffs cry foul. They believe the Defendants conspired to prosecute Mr. Ellis in justice court to retaliate against the Plaintiffs for filing a civil rights suit, and they point to the fact that Cottonwood Heights filed the charges only six days after Plaintiffs sued the Defendants.

Defendants deny the allegations. Chief Russo, in his declaration, explained that "[w]hen the District Attorney's office decides to file charges in a case the City [of Cottonwood Heights] has referred, there is no formal process by which the District Attorney's office keeps the City updated on the status of the case." (Decl. of E. Robby Russo ¶ 4, ECF No. 27-3.) The City of Cottonwood Heights does not monitor pending charges brought by the District Attorney, so it was unaware that the criminal charges against Mr. Ellis in Third District Court had been dismissed until it learned of that fact through the Ellises' civil rights complaint. According to Chief Russo, "Had the City learned that the charges brought by the District Attorney had been dismissed sooner, the City would have forwarded the case to the City Prosecutor at that time." (Id. ¶ 12.) When Chief Russo did learn the charges had been dropped, he "contacted the Cottonwood Heights Prosecutor, [Defendant James] Hansen, and told him that the City was forwarding the case to his office for screening to determine whether to bring charges in justice court." (Id. ¶ 7.) He asserts that "[t]he only connection with the filing of the lawsuit is that it happens to be how the City learned that the charges by the District Attorney's office had previously been dismissed." (Id. ¶ 15.) As for allegations specific to him, he responds that he "did not pressure the City Prosecutor to file charges against Mr. Ellis for any reason, including that this lawsuit had been filed." (Id. ¶ 13.)

Plaintiffs suggest that the Cottonwood Heights Defendants and the Prosecutor Defendants are not telling the truth about why they prosecuted Mr. Ellis.  In particular, Plaintiffs cite to an email from Holladay City's attorney to Plaintiffs' counsel.  In that email, Holladay's attorney said Prosecutor Defendant James Hansen told him that Mr. Hansen "started the screening of the case and commenced the effort to refile long before he was aware of the [civil rights] lawsuit." (Nov. 12, 2021 e-mail from Gregory Hoole to Pls.' counsel, attached as Ex. 7 to Pls.' Opp'n to Cottonwood Heights Motion, ECF No. 38 at p. 48.)  That is inconsistent with Chief Russo's statement that he asked Mr. Hansen to screen the case only after Plaintiffs sued.  But, as explained below, that exchange does not carry the day for Plaintiffs.

After the Prosecutor Defendants filed charges in justice court, Plaintiffs filed an amended complaint, in which they bring seven causes of action under 42 U.S.C. §§ 1983, 1985, 1986, and 1988: (1) Warrantless search, detention, arrest (against the Officers); (2) Retaliatory Inducement to Prosecute (against the Officers); (3) Excessive Force (against the Officers); (4) Conspiracy to Deprive Civil Rights (against the Officers, Chief Russo, and the Prosecutor Defendants); (5) Due Process (against the Prosecutor Defendants, Cottonwood Heights, and Holladay); (6) Retaliatory Prosecution (against the Prosecutor Defendants); and (7) Vindictive Prosecution (against the Prosecutor Defendants).  They seek money damages as well as "[a] declaration that Defendants' conduct violated the Ellises' rights under the United States Constitution and under 42 U.S.C. §§ 1983, 1985, and 1986" and "[a]ffirmative relief, ordering that all arrest, booking, and court filings in the underlying criminal matters be destroyed or sealed and deleted from any state or federal database[.]"  (Am. Compl. at p. 41.)

In their amended claims, the Ellises allege the Prosecutor Defendants did not have authority to bring the charges because "they are private independent contractors, and not public

prosecutors, as is required by Utah Code and provisions of the Utah and United States constitutions to prosecute criminal actions." (Id. ¶ 109.)  They also claim the Prosecutor Defendants filed the charges in the pending criminal case less than a week after Plaintiffs filed this case to retaliate for exercising their constitutional rights.

Plaintiffs include Chief Russo in their claims of vindictive and retaliatory prosecution. They allege that he

> induced the third prosecution in justice court . . . by using his political and financial sway over Defendants Hansen Law, [James] Hansen and Melissa Mellor, despite knowing the charges lack probable cause, and despite his employees' contemptuous failures to appear at two prior preliminary hearings in district court, and for the purpose of hindering or preventing this lawsuit, and to punish the Ellises for the temerity to protest their treatment during and since the attack in their home.

(Id. ¶ 163.)

The justice court criminal matter is still pending.  Mr. Ellis filed a number of motions with that court, including: (1) Motion to Dismiss Time-Barred Information, in which he argued the charges are barred by the statute of limitations; (2) Motion to Dismiss for Lack of Standing, in which he argued that Utah law does not give the Prosecutor Defendants authority to prosecute criminal offenses because they are for-profit independent contractors; (3) Motion to Dismiss With Prejudice Under Utah Rule of Criminal Procedure 25 and Due Process, in which he argued that the "attempted assault" charge is not valid under Utah law; and (4) Motion to Dismiss for Entrapment.

In May 2022, the justice court denied the two motions concerning the statute of limitations and the Prosecutor Defendants' authority to bring the charges against Mr. Ellis. Other pre-trial motions are still pending, and the justice court has scheduled a status conference for August 29, 2022.

## ANALYSIS

This court has three motions before it.  The Cottonwood Heights Defendants have filed a Rule 12(b)(1) Motion to Dismiss and Stay[3] under the Younger abstention doctrine.  The Prosecutor Defendants have filed a parallel motion, in which they join the Cottonwood Heights Defendants' request to dismiss and stay.[4]  The City of Holladay filed its own motion to dismiss or stay Plaintiffs' claim against Holladay,[5] which asserts a due process violation based on Holladay's prosecution agreement with the Prosecutor Defendants and its court-services sharing agreement with Cottonwood Heights.  Holladay asserts that dismissal is warranted because Plaintiffs lack standing, but it alternatively asks (if the court finds Plaintiffs have established standing) for a dismissal and stay under the Younger abstention doctrine.[6]

For the reasons discussed below, the court does not have subject matter jurisdiction over a portion of Plaintiffs' Amended Complaint because Plaintiffs have not established standing for certain causes of action.  As for the remaining claims, the court concludes that partial dismissal and a stay are appropriate under Younger and the court's inherent authority.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal based on lack of subject matter jurisdiction.[7]  The burden to establish subject matter jurisdiction rests with the Plaintiffs.  Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).

---

[3] ECF No. 27.
[4] ECF No. 32.
[5] ECF No. 33.
[6] Holladay alternatively asks the court to dismiss for failure to state a claim under Rule 12(b)(6). Because the court is abstaining, it will not address that issue.
[7] Defendants note that technically "a dismissal based on Younger abstention is not a dismissal 'for lack of jurisdiction' within the meaning of the federal rules." Goings v. Sumner Cty. Dist. Attorney's Office, 571 F. App'x 634, 639 (10th Cir. 2014) (unpublished) (citing D.A. Osguthorpe Family P'ship v. ASC Utah, Inc., 705 F.3d 1223, 1230 n.8 (10th Cir. 2013)). Rather,

A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may take the form of either a facial or a factual attack.  "Under a facial attack, the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true," just as the court would under Rule 12(b)(6).  Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005); Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).  "In a factual attack … the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends."  Paper, Allied-Indus., Chem. & Energy Workers Int'l Union, 428 F.3d at 1292.  The court "has wide discretion to allow documentary and even testimonial evidence" to resolve disputes of jurisdictional facts arising in a factual attack.  Id.

The Cottonwood Heights and Prosecutor Defendants support their motion with declarations and other evidence.  On the other hand, Holladay focuses on the Amended Complaint's allegations.  The record supports both challenges.

**Standing**

The court's subject matter jurisdiction under Article III of the United States Constitution is limited to actual cases or controversies.  Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (1997).  "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue."  Raines v. Byrd, 521 U.S. 811, 818

---

"'Younger is a doctrine of abstention … under which a District Court may decline to exercise … its jurisdiction.'"  Id. (quoting Osguthorpe, 705 F.3d at 1230 n.8).  But Rule 12(b)(1) is an appropriate vehicle to raise Younger abstention issues.  See § 1350 Motions to Dismiss—Lack of Jurisdiction Over the Subject Matter, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.) ("Courts have recognized a variety of other defenses that one normally would not think of as raising subject-matter jurisdiction questions when considering a Rule 12(b)(1) motion, such … the subject matter is one over which the federal court should abstain from exercising jurisdiction.") (citing cases).

(1997).

To establish Article III standing, Plaintiffs have to satisfy three criteria.  First, they must have suffered a concrete and particularized "injury in fact."  Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005).  To satisfy the second element, they need to show "a causal connection between that injury and the challenged action of the defendant—the injury must be 'fairly traceable' to the defendant, and not the result of the independent action of some third party."  Id.  The "fairly traceable" element, a causation requirement, is "something less than the concept of 'proximate cause'" but still requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."  Id. at 1156.  As for the third element, Plaintiffs must demonstrate a substantial likelihood that "a favorable judgment will redress the injury."  Id. at 1154.  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.  Where … a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element."  Spokeo, 578 U.S. at 338 (internal citations and quotation marks omitted).

Holladay City raises well founded standing concerns in its motion asking the court to dismiss Plaintiffs' Fifth Cause of Action against it.  That due process claim arises out of the prosecution of Mr. Ellis.  But Cottonwood Heights, not Holladay, is prosecuting Mr. Ellis.  Even if the prosecution violated Mr. Ellis's due process rights, the injury, if any, would have been caused by Cottonwood Heights.  In other words, the alleged injury is the result of Cottonwood Heights' independent decision to prosecute.  Accordingly, Mr. Ellis does not allege an injury fairly traceable to Holladay.  As for Mrs. Ellis and A.K.E., neither has been prosecuted for any crime, so they have no injury the court can redress.

10

The court also finds, on its own initiative, that five of Mrs. Ellis's and A.K.E.'s six claims against the Cottonwood Heights Defendants and the Prosecutor Defendants suffer from standing problems as well.  Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (federal courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party"); Rector v. City & Cty. of Denver, 348 F.3d 935, 942 (10th Cir. 2003) (because standing "raises jurisdictional questions," courts "are required to consider 'the issue *sua sponte* to ensure that there is an Article III case or controversy'" before them).  None of the Amended Complaint's allegations suggest that Mr. Ellis's wife or child were detained, subjected to force, arrested, or prosecuted for any crime.  Accordingly, they have not alleged an injury-in-fact arising out of the Officers' detention and arrest of Mr. Ellis and Cottonwood Heights' subsequent prosecution.  See also Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990) (recognizing the "well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else"); Tracy v. Simplifi, No. 2:21-cv-044-RJS-CMR, 2022 WL 1230410, at *3 (D. Utah Jan. 19, 2022) (because § 1985 cause of action is personal to the party asserting conspiracy to violate his civil rights, third party asserting that claim lacks standing); Santistevan v. Loveridge, 732 F.2d 116, 118 (10th Cir. 1984) ("[T]here can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985.").  Given their failure to allege facts suggesting otherwise, the court dismisses Mrs. Ellis's and A.K.E.'s claims arising out of those events, which include all but their claim in the First Cause of Action concerning the Officers' warrantless entry into the hotel room.

### *Younger* Abstention

The abstention doctrine the Supreme Court articulated in Younger requires that "federal

courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court." Amanatullah v. Colo. Bd. of Med. Examiners, 187 F.3d 1160, 1163 (10th Cir. 1999) (internal quotation marks omitted). The Supreme Court "based this restraint on notions of comity and federalism, which require that federal courts respect state functions and independent operation of state legal systems." Phelps v. Hamilton (Phelps II), 122 F.3d 885, 889 (10th Cir. 1997). Accordingly, "federal courts, except in the most exceptional circumstances, must dismiss suits for declaratory or injunctive relief against pending state criminal proceedings." Id. Remaining claims for monetary damages associated with the same conduct should be stayed. D.L. v. Unified Sch. Dist. No. 497, 392 F.3d 1223, 1228 (10th Cir. 2004) ("[T]he Younger doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding. The rationale for Younger abstention can be satisfied … by just staying proceedings on the federal damages claim until the state proceeding is final.") (internal citation omitted).

Defendants contend that the Younger abstention doctrine requires the court to dismiss Plaintiffs' claims for equitable relief that are based on the Officers' entry into the hotel room and the subsequent arrest and prosecution (that is, all but the third cause of action for excessive force) and to stay the related claims for money damages pending resolution of the criminal proceeding. The court agrees.

### 1. Criteria for Younger Abstention

The court must abstain from exercising jurisdiction if "(1) [t]here is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to

hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests (matters which traditionally look to state law for resolution or implicate separately articulated state policies)." <u>Crown Point I, LLC v. Intermountain Rural Elec. Ass'n</u>, 319 F.3d 1211, 1215 (10th Cir. 2003).

Here, the criteria for abstention are easily satisfied.  First, the justice court proceeding, which is in the pre-trial motion stage, is ongoing.

Second, the state court provides an adequate forum to resolve the claims alleged here. "[A] plaintiff has an adequate opportunity to raise federal claims in state court unless state law clearly bars the interposition of the [federal statutory] and constitutional claims." <u>Id.</u> (internal citation and quotation marks omitted).  According to the Tenth Circuit, "the Utah state judiciary provides an adequate forum for [a plaintiff] to assert his constitutional claims." <u>Weitzel v. Div. of Occupational & Prof'l Licensing</u>, 240 F.3d 871, 876 (10th Cir. 2001).  Indeed, Mr. Ellis has filed motions in the justice court raising some of the same arguments he raises in his complaint here (that is, that the prosecutors do not have authority to bring the charges, and the Cottonwood Heights and Prosecutor Defendants filed the charges to harass and retaliate for filing the civil rights complaint).  The justice court has already ruled on some of those issues.

Still, despite Mr. Ellis's attempt to litigate the same issues in the justice court proceeding, Plaintiffs contend the justice court does not provide an adequate forum.  They note that neither Mrs. Ellis nor A.K.E. is a party to the state court proceeding.  But, as the court has held, Mrs. Ellis and A.K.E. do not have standing here to assert anything other than their claim concerning the Officers' entry.  And, as discussed below, <u>Younger</u> requires the court to abstain as to that claim because it is intertwined with Mr. Ellis's claim of illegal entry.

They also assert Mr. Ellis cannot address the validity of the entry and arrest in justice court because that issue is irrelevant to a defense against three of the four criminal charges. In other words, according to Plaintiffs, even if the Officers' entry and arrest were unconstitutional, that would not be a defense to the charges of attempted assault, interference with arrest, and disorderly conduct. But Plaintiffs essentially admit the justice court provides an adequate forum to address issues concerning the fourth charge—failure to disclose identity—where the constitutionality of the Officers' conduct is relevant.[8] (Pls.' Opp'n to Cottonwood Heights Motion at 24 ("the failure to disclose identity charge [is] one that this Court should defer to the state court").) No matter the context, he can raise the issues in the criminal proceeding.

The third criterion for abstention is also easily satisfied. The Tenth Circuit recognizes that "the State of Utah has an important interest in its criminal proceedings." Buck v. Meyers, 244 F. App'x 193, 197 (10th Cir. 2014).

Given that all three criteria have been met, Younger abstention is mandatory absent exceptional circumstances (which, as discussed below, have not been established). Weitzel, 240 F.3d at 875.

That mandatory requirement extends to Mrs. Ellis's and A.K.E.'s claims. Although Mrs. Ellis and A.K.E. are not part of the criminal proceeding, abstaining from exercising jurisdiction over their remaining claim (illegal warrantless entry) is necessary.

The United States Supreme Court has said "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger

---

[8] Mr. Ellis questions the merits of that criminal charge, which, to him, "is a clear-cut loser in the state court[.]" (Pls.' Opp'n to Cottonwood Heights Motion at 24 (arguing that the failure-to-disclose-identity charge fails because the officers did not have reasonable suspicion to ask for Mr. Ellis's identification).) Even if that is true, that issue is part of the criminal proceeding, which, under Younger, takes precedence.

considerations which govern any one of them." <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922, 928 (1975). This is one of those situations.

> Where a federal plaintiff has "a substantial stake in the state proceedings" or has interests that are "intertwined" with the interests of a party to the state proceedings, abstention—sometimes referred to as derivative abstention—may be appropriate. <u>Hicks v. Miranda</u>, 422 U.S. 332, 348–39, 95 S. Ct. 2281, 45 L.Ed.2d 223 (1975). Under such circumstances, "[t]he same comity considerations" underlying <u>Younger</u> "[p]lainly ... apply ...." <u>Id.</u> at 349, 95 S. Ct. 2281.

<u>Lighthouse Fellowship Church v. Northam</u>, 462 F. Supp. 3d 635, 646–47 (E.D. Va. 2020). <u>See also, e.g.</u>, <u>Herrera v. City of Palmdale</u>, 918 F.3d 1037, 1046–47 (9th Cir. 2019) (applying <u>Younger</u> abstention to claims of plaintiffs who were not parties to the state proceeding, because their interests were "sufficiently intertwined") (collecting cases extending abstention in similar circumstances); <u>Collins v. Kendall Cty., Ill.</u>, 807 F.2d 95, 101–02 (7th Cir. 1986) (extending <u>Younger</u> abstention to co-plaintiff's § 1983 claims even though she was not a party to the state court proceeding, because all plaintiffs were associated with the same entity and the state court proceeding implicated their common interests).

Mrs. Ellis's and A.K.E.'s claim is based on the very same facts underlying Mr. Ellis's claim. Under the principles of <u>Doran</u>, their circumstances are so closely related to Mr. Ellis's circumstances that <u>Younger</u> abstention also applies to them.

### 2. Exceptions to <u>Younger</u> Abstention

Plaintiffs can avoid abstention if they establish exceptional circumstances, but the exceptions to the rule are narrow. "[A] federal plaintiff may overcome the presumption of abstention 'in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown....'" <u>Phelps II</u>, 122 F.3d at 889 (quoting

<u>Perez v. Ledesma</u>, 401 U.S. 82, 85 (1971)).[9]  When considering whether a plaintiff meets one of the exceptions, the court "must balance the necessity of protecting an individual's exercise of his or her constitutional rights with a prosecutor's discretion in selecting certain actions for criminal prosecution."  <u>Phelps v. Hamilton (Phelps I)</u>, 59 F.3d 1058, 1064 (10th Cir. 1995).

Plaintiffs contend that bad faith and harassment justify denial of Defendants' request for <u>Younger</u> abstention.  They have a heavy burden to overcome the presumption of abstention. "[I]ntervention cannot be predicated on mere allegations; rather, the federal plaintiff must prove bad faith or harassment before intervention is warranted."  <u>Id.</u> at 1066.

Courts consider three factors to determine whether a prosecutor filed criminal charges in bad faith or to harass: (a) is the prosecution "frivolous or undertaken with no reasonably objective hope of success?"; (b) was the prosecution "motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights?"; and (c) is the prosecution "harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions?"  <u>Phelps II</u>, 122 F.3d at 889.  Plaintiffs argue that all three weigh heavily against abstention.

a.  <u>Is the Prosecution Frivolous?</u>

Plaintiffs say Cottonwood Heights' prosecution is frivolous and brought without reasonably objective hope of success.  In support, they maintain that the Prosecutor Defendants lack statutory or constitutional authority to prosecute, that the crime of "attempted assault against a peace officer" does not exist in the Utah Code, and that the state court judge in the original

---

[9] Additionally, when the statute under which the state is prosecuting the defendant is "flagrantly and patently" unconstitutional, the court need not abstain.  <u>Younger</u>, 401 U.S. at 53–54.  But Plaintiffs do not raise that issue in their complaint or opposition briefs.

prosecution threatened to dismiss a subsequent prosecution with prejudice if the officers did not appear at the second preliminary hearing.

Plaintiffs have already asked the justice court to rule on the first two issues. Indeed, that court has already considered, and rejected, Mr. Ellis's argument regarding prosecutorial authority. Mr. Ellis's motion challenging validity of the "attempted assault" charge[10] is still pending. The court will not interfere with the state court's interpretation of a state criminal statute, particularly because Mr. Ellis has already asked the state court to decide the issue.

The court adds that, apart from <u>Younger</u>, Plaintiffs' request that this court address the legal validity of a misdemeanor charge raises concerns under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), because this court's ruling could impugn a criminal conviction:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, <u>Heck</u> will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

<u>Wallace v. Kato</u>, 549 U.S. 384, 393–94 (10th Cir. 2007). <u>See also</u> <u>Heck</u>, 512 U.S. at 487, n.8 ("abstention may be an appropriate response to the parallel state-court proceedings"). Deciding the legal issues Mr. Ellis raises here could set up a conflict with the <u>Heck</u> bar.

As for Plaintiffs' final point, the original district court judge's threat to dismiss with prejudice if the officers failed to appear a second time does not support their position. The risk of prejudicial dismissal existed in district court, not justice court. Plaintiffs do not provide authority that the original district court judge's statement would require the justice court to

---

[10] <u>See</u> Ellis's Mot. to Dismiss With Prej. Under Utah R. Crim. P. 25 and Due Process (Docket No. 42 in Utah justice court criminal proceeding), attached as Ex. 7 to Cottonwood Heights Motion, ECF No. 27-7.

dismiss the prosecution based on the Officers' failure to appear at the second preliminary hearing in a different court and in a previous prosecution.

b. <u>Is the Prosecution Retaliatory?</u>

Plaintiffs alternatively argue that abstention is not appropriate because Cottonwood Heights and the Prosecutor Defendants prosecuted Mr. Ellis in retaliation for filing the civil rights complaint.  To succeed, Plaintiffs "must prove that retaliation was a major motivating factor and played a dominant role in the decision to prosecute." <u>Phelps I</u>, 59 F.3d at 1066 (internal citation and quotation marks omitted).  If Plaintiffs "make an initial showing of retaliatory animus, the burden then shifts to [the Defendants] to rebut the presumption of bad faith by offering legitimate, articulable, objective reasons to justify [the] decision'" to prosecute. <u>Id.</u> (internal citations and quotation marks omitted).

Plaintiffs point to the timing of the prosecution and inconsistent statements explaining why Cottonwood Heights filed the charges right after Mr. Ellis filed his civil rights complaint. And they again question the legal validity of the "attempted assault" charge, asserting that Cottonwood Heights and the Prosecutor Defendants made up the charge to invoke the jurisdiction of the justice court and avoid dismissal in district court.

For the reasons already stated, the court will not address whether the crime of attempted assault is a legal nullity.  That issue is pending before the justice court.

As for the timing of the prosecution, and varying explanations for the timing, Plaintiffs' proof falls short.  Cottonwood Heights filed charges six days after Plaintiffs filed their complaint, seven months after the second prosecution was dismissed, and three years after the incident at the hotel room.  Although the six-day proximity in particular supports an inference of retaliatory motive, sworn testimony from Chief Russo rebuts that inference.

According to the Cottonwood Heights Defendants and the Prosecutor Defendants,

> the only reason for the proximity of timing between the filing of this lawsuit and the justice court charges is that the City [of Cottonwood Heights] was unaware that the charges brought by the District Attorney had been dismissed. Had it known of that fact earlier, it would have referred the case for screening to the Prosecutor Defendants at that time. This is not uncommon; the City often refers cases where the District Attorney has declined to bring charges, particularly given the District Attorney's resources often result in that office not pursuing misdemeanor charge. Chief Russo has explained that Mr. Ellis's case was forwarded for screening in the same manner as other cases; there was not pressure placed on the Prosecutor Defendants to bring charges, whether for retaliation or otherwise.

(Cottonwood Heights Motion at 13.)

To impeach Defendants' explanation, Plaintiffs point to contradictory evidence in the email from Holladay City's counsel to Plaintiffs' counsel. Mr. Hansen allegedly stated, as relayed by Holladay's counsel in the email, that he began screening the case and planned to refile charges before he learned about the civil rights lawsuit. That statement conflicts with Chief Russo's explanation that he prompted Mr. Hansen to screen the charges upon learning of the civil rights lawsuit. But Plaintiffs' attempt to discredit Chief Russo's sworn explanation with an unsworn secondhand account does not undermine Defendants' solid evidence.

Plaintiffs also assert that Cottonwood Heights and the Prosecutor Defendants invented a lower level misdemeanor charge ("attempted assault") to invoke the jurisdiction of the justice court and avoid dismissal with prejudice in the original forum.[11] The original district court judge's threat to dismiss with prejudice a second time is not strong proof of retaliatory motive. Plaintiffs maintain, with little explanation and no citation to "law of the case" authority, that

---

[11] See Pls.' Opp'n to Cottonwood Heights Motion at 17 ("[T]he Cottonwood Heights Defendants went to great lengths to file the pending criminal action by charging a non-existent offense to invoke the jurisdiction of the justice court where the [Third District Court] had indicated it would dismiss with prejudice if the prosecution was unable to proceed at a second preliminary hearing, as was the case.").

dismissal with prejudice would have been a likely, if not inevitable, consequence if charges were filed a third time in district court. The record is far from clear on that point, and that ambiguity undermines their suggestion that Cottonwood Heights knew its only hope of keeping Mr. Ellis in the criminal justice system was to make up charges and avoid district court. Their theory does not serve as proof of retaliatory motive.

Given the above, the court finds that Plaintiffs have not proved that retaliation was the "major motiving factor" or "played a dominant role" in Cottonwood Heights' and the Prosecutor Defendants' decision to prosecute Mr. Ellis.

c. Was the Prosecution Filed to Harass?

Under this exception to abstention, the court considers whether the prosecution "was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." Phelps I, 59 F.3d at 1065. Plaintiffs "must demonstrate both the existence of a substantial number of prosecutions and that a reasonable prosecutor would not have brought such multiple charges under similar circumstances." Id. at 1066.

> While the threshold test does not require a specific number of prosecutions, it is clear that the number of prosecutions must reach an oppressive level. Moreover, mere numbers alone do not tell the full story. For example, even multiple prosecutions may not be overly burdensome if the prosecutions are, or are likely to be, consolidated into a single trial. Furthermore, the reasons why the prosecutor brought multiple prosecutions are also important—e.g. was it to wear the defendant down with the financial and emotional expense of multiple trials, or was it because the events themselves were separated by time or jurisdiction or otherwise by factors that explained the use of multiple prosecutions.

Id. at 1066–67 (internal citations omitted).

Here, the three prosecutions do not rise to an oppressive level. Although Mr. Ellis has been charged three times, the first two cases, brought by the Salt Lake County District Attorney's Office, were dismissed at the preliminary hearing stage without any testing of the

merits.  Moreover, Mr. Ellis will only have one trial.  "[E]ven multiple prosecutions may not be overly burdensome if the prosecutions are, or are likely to be, consolidated into a single trial." Id. at 1066.  And although Mr. Ellis adamantly disputes the merits of the charges against him, there is at least a colorable factual and legal basis for the prosecution.

In other cases involving more extensive prosecutions, courts have found that the bad faith exception to Younger abstention did not apply.  In Phelps I, the plaintiffs argued that nine different prosecutions—seven of which were initiated within a three-month period—was oppressive.  The Tenth Circuit disagreed:

> [T]he number of separate prosecutions is relevant, but the mere fact that [the prosecutor] filed several prosecutions against Phelps is not dispositive because the parties' briefs suggest that the criminal defamation prosecutions were based on probable cause.  See, e.g., Collins v. County of Kendall, Ill., 807 F.2d 95, 99 (7th Cir.1986) ("Instituting approximately thirty criminal prosecutions [against bookstore for obscene material] over a two-year period does not constitute bad faith or harassment in and of itself."), cert. denied, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987); Grandco Corp. v. Rochford, 536 F.2d 197, 203 (7th Cir.1976) (court "not persuaded that evidence of multiple prosecutions is sufficient by itself to support [the] necessary inference" of bad faith or harassment).

Id. at 1067–68.  See also, e.g., Weitzel, 240 F.3d at 877 (finding three prosecutions was not oppressive because the prosecuting body "demonstrated a reasonable basis for each of the three actions").  Certainly if the facts in those cases did not establish oppressive prosecution, this case does not meet the narrow bad faith exception to abstention.  The three prosecutions of Mr. Ellis simply do not rise to a level of oppression that would justify this court's interference with the justice court proceeding.

d.  Conclusion

The exceptions to Younger abstention "only provide for a 'very narrow gate' for federal intervention."  Phelps I, 59 F.3d at 1064 (quoting Arkebauer v. Kiley, 985 F.2d 1351, 1358 (7th Cir. 1993)).  Plaintiffs have not proved that the circumstances "create[e] an extraordinarily

pressing need for immediate federal equitable relief" in the Younger context.  Kugler v. Helfant, 421 U.S. 117, 125 (1975).  Because they have not carried their "heavy burden of proof," they cannot overcome the bar of Younger abstention.  Phelps I, 59 F.3d at 1064.

**Inherent Authority to Stay**

Although the Younger abstention doctrine does not affect the excessive force claim (the Third Cause of Action), Defendants ask the court to exercise its discretion to stay that claim as well under the court's inherent authority.  To determine whether to issue such a stay, the court considers six factors.

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

Windham for Marquis Properties, LLC v. Snyder, No. 2-18-cv-000063-RJS-EJF, 2018 WL 4100512, at *2–3 (D. Utah Aug. 28, 2018) (cleaned up).

There is no question that many of the issues Plaintiffs raise in both proceedings significantly overlap.  The justice court has yet to resolve some of them, and that case is actively going forward.

The balance of Plaintiffs' and Defendants' interests also weighs in favor of granting a stay.  Although Plaintiffs have an interest in moving their case forward, the court is going to stay all but the third cause of action under Younger.  Requiring the parties to conduct discovery on a single claim would be a waste of resources, for the parties would have to duplicate some of their efforts, such as deposing witnesses twice.  Additionally, as Defendants point out, a delay would not affect Plaintiffs' ability to collect a money judgment.

Mr. Ellis's rights as a criminal defendant are also key.  When deciding whether to stay the claim, the court should consider whether a stay is necessary to protect a party's Fifth Amendment rights, to "prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution." Creative Consumer Concepts, Inc. v. Kreisler, 563 F.3d 1070, 1080 (10th Cir. 2009).  Mr. Ellis's ability to litigate his excessive force claim now may be hindered by his need to protect his rights in the criminal proceeding.  Both proceedings arise out of the very same set of facts and implicate similar legal issues.  Although it is difficult to predict, if the court were to allow Mr. Ellis's excessive force claim to go forward now, Mr. Ellis may need to choose between exercising his constitutional rights and litigating his claims.  He should not have to compromise.

As for the court and the public, their interests would be better served by staying litigation of the third claim.  Duplicative discovery would waste not only the parties' resources but the court's as well.  Moreover, "while the Court and the public have an interest in the swift resolution of civil litigation, interests in the prompt and fair resolution of criminal matters take precedence." Windham, 2008 WL 4100512, at *5.

Given the above considerations, the court stays litigation of Mr. Ellis's excessive force claim pending resolution of the justice court criminal proceeding.

## <u>ORDER</u>

For the foregoing reasons, the court ORDERS as follows:

1.      Defendant Holladay City's Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Abstention Relief, and to Dismiss for Failure to State a Claim (ECF No. 33) is

GRANTED as follows: Plaintiffs' Fifth Cause of Action against Holladay City is dismissed without prejudice for lack of standing.[12]

2.      The court *sua sponte* dismisses Mrs. Ellis's and A.K.E.'s Second, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action against the Cottonwood Heights Defendants and Prosecutor Defendants for lack of standing.  That dismissal is also without prejudice.

3.      The Motion to Dismiss and Stay (ECF No. 27), filed by Defendants Daniel Morzelewski, Kyle Mahoney, Ken Eatchel, Ernest Robert Russo, and the City of Cottonwood Heights, is GRANTED as follows:

   a.      The court dismisses Plaintiffs' claims for equitable relief under the First Cause of Action, and stays their corresponding claims for monetary damages pending resolution of the state court criminal proceeding.

   b.      The court dismisses Mr. Ellis's claims for equitable relief in his Second, Fourth, and Fifth Causes of Action against the Cottonwood Heights Defendants, and stays his corresponding claims for monetary damages pending resolution of the state court criminal proceeding.

   c.      The court stays Mr. Ellis's Third Cause of Action in its entirety pending resolution of the state court criminal proceeding.

4.      The Motion to Dismiss and Stay (ECF No. 32), filed by Defendants James Hansen, Melissa Mellor, and Hansen Law, P.C. is GRANTED.  The court dismisses Mr. Ellis's claims for equitable relief under the Sixth and Seventh Causes of Action and stays his

---

[12] See <u>Brereton v. Bountiful City Corp.</u>, 434 F.3d 1213, 1216 (10th Cir. 2006) ("Since standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate[.]").

corresponding claims for monetary damages pending resolution of the state court criminal proceeding.

     5.     Within 30 days after the criminal proceeding is concluded (which includes exhaustion of appeals), the parties are to file a joint status report with the court.

     DATED this 24th day of August, 2022.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge