IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARVIN BARNES ELLIS and ANN JEANETTE MARIE ELLIS, individually and on behalf of A.K.E.,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL MORZELEWSKI, KYLE MAHONEY, KEN EATCHEL, and ERNEST ROBERT RUSSO, individually and in their official capacities as Cottonwood Heights Police Department employees; JAMES HANSEN, an individual; MELISSA MELLOR, an individual; HANSEN LAW, P.C., a Utah corporation; and CITY OF COTTONWOOD HEIGHTS, a governmental entity,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS, GRANTING LEAVE TO AMEND, AND GRANTING LEAVE TO SUBSTITUTE PARTY**<br><br>2:21-cv-00639-TC-JCB<br><br>Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

This civil rights case, which concerns claims of excessive force and retaliatory prosecution, arises out of the 2018 arrest and subsequent criminal prosecution of Plaintiff Marvin Barnes Ellis in Utah state court. On August 24, 2022, the court stayed the action pending the resolution of the state court criminal proceeding. (Order & Mem. Decision, ECF No. 49.) On June 12, 2025, Mr. Ellis died while the prosecution against him was ongoing. (See Status Report, ECF No. 50.) He is survived by his wife, Ann Jeanette Marie Ellis, and his son, A.K.E., who are also Plaintiffs in this action.

There are now four motions before the court. Defendants James Hansen, Melissa Mellor, and Hansen Law, P.C. (the Prosecutor Defendants) have filed a motion to dismiss, arguing that the claims against them are barred by the doctrine of prosecutorial immunity. (ECF No. 63.)

Defendants Daniel Morzelewsi, Kyle Mahoney, and Ken Eatchel (the Officers), Defendant Ernest Robert Russo (Chief Russo), and Defendant City of Cottonwood Heights (Cottonwood Heights) (collectively, the Cottonwood Heights Defendants) have also filed a motion to dismiss, arguing that Chief Russo and the Officers are entitled to qualified immunity and that the Plaintiffs have failed to state a claim against Cottonwood Heights. (ECF No. 64.)

The Plaintiffs have filed a motion requesting leave to file a Second Amended Complaint. (ECF No. 76.) They seek to add allegations related to events that occurred while this action was stayed, to add Chief Russo to the caption of their second cause of action for inducement to retaliatory prosecution, to add another prosecutor to their claims against the Prosecutor Defendants, and to add a cause of action for retaliation. (See id.) In a separate motion, the Plaintiffs seek to substitute Mrs. Ellis, in her capacity as the personal representative of Mr. Ellis's estate, as the proper party to prosecute Mr. Ellis's claims after his death. (ECF No. 70.)

For the reasons stated below, the court grants the Plaintiffs' motion to substitute. The remaining motions are granted in part and denied in part.

**FACTUAL BACKGROUND**

In its previous order, the court recited the facts that were relevant to the motions then pending before the court. (See ECF No. 49 at 2–7.) The court repeats the facts that are relevant to the issues presented by this new round of motions.

The Plaintiffs' claims arise from events that began on December 9, 2018, when Sergeant Morzelewski, Sergeant Eatchel, and Officer Mahoney, members of the Cottonwood Heights Police Department, responded to a report of a domestic altercation at an extended stay hotel in Cottonwood Heights where Mr. Ellis, his wife, and their son were staying. (Am. Compl. ¶¶ 15, 21–22, 28, ECF No. 21.) After the Ellises had settled into their new living space, a neighbor

called the police and reported that he heard what sounded like an argument and a body colliding with a wall in the Ellises' room. (Id. ¶¶ 22, 140.) The Officers responded to the call. (Id. ¶ 28.) They knocked on the door and then entered the Ellises' room without a warrant. (See id.) In response to the Officers' request for Mr. Ellis's identification, Mr. Ellis repeatedly asked them to leave the room. (Id.) According to the Plaintiffs, none of the Officers told Mr. Ellis he was being detained or arrested; instead, Sergeant Morzelewski "grabbed Mr. Ellis and, with [Officer] Mahoney's assistance, … physically yanked Mr. Ellis out of the hotel room." (Id. ¶¶ 32–35, 44.)

The Plaintiffs allege the Officers unlawfully removed Mr. Ellis from the room, tased him, handcuffed him, and forcibly placed him face down on the ground in the hallway, where the Officers "wrench[ed] his handcuffed arms behind his head" and Sergeant Morzelewski "drove his knee into Mr. Ellis's ribs." (Id. ¶¶ 44–53.)

Emergency medical personnel, who responded after Mr. Ellis requested medical assistance, assessed Mr. Ellis and took him to a nearby hospital; he was later released to jail. (Id. ¶¶ 63, 65.) The Salt Lake County District Attorney's Office then charged him in the State of Utah's Third District Court with three misdemeanor counts: assault against a peace officer, interference with an arresting officer, and failure to disclose identity. (Id. ¶¶ 92, 94.)

On September 9, 2019, the district court judge dismissed that case without prejudice for the Officers' failure to appear at the preliminary hearing. (Id. ¶ 94.) The judge stated that he would dismiss a subsequent prosecution with prejudice if the officers did not appear at the second preliminary hearing. (Id. ¶ 95.)

According to the Cottonwood Heights Defendants, Officer Mahoney had actually appeared to testify on behalf of the Officers (as allowed at a preliminary hearing) and was waiting in the hall, but for some unexplained reason, no one called him into the courtroom.

(Decl. Kyle Mahoney ¶¶ 2–12, ECF No. 27-1.) GPS data confirms that Officer Mahoney was at the courthouse at the hearing time. (Mahoney GPS Data at 2:24–54, Ex. A to Mahoney Decl.)

A week later, on September 16, 2019, the District Attorney's Office refiled the charges in the Third District Court. (Am. Compl. ¶ 96.) On March 18, 2021, a different district court judge dismissed the charges without prejudice, again for the Officers' failure to appear for a scheduled preliminary hearing (although the Cottonwood Heights Defendants have suggested that Sergeant Morzelewski was at the courthouse at that time). (Id. ¶ 99; see Cottonwood Heights Mot. Dismiss & Stay, ECF No. 27 at 5.) The Plaintiffs allege that, had the second judge been aware of the first judge's statement concerning dismissal with prejudice for a second nonappearance, the second judge would have dismissed the charges with prejudice.[1] (Am. Compl. ¶ 101.)

On October 27, 2021, the Ellises filed their initial civil rights complaint in this court. (See Compl., ECF No. 2.) Six days later, on November 2, 2021, Cottonwood Heights, through the Prosecutor Defendants, filed four misdemeanor charges against Mr. Ellis in Holladay Justice Court: attempted assault on a peace officer, interference with an arresting officer, failure to disclose identity, and disorderly conduct. (Am. Compl. ¶ 106.)

The Prosecutor Defendants are private attorneys who provide prosecution services to Cottonwood Heights through two interrelated contracts: 1) an independent contractor agreement through which the City of Holladay hired them to prosecute cases; and 2) Holladay's agreement with Cottonwood Heights to share court services, including the Prosecutor Defendants' services. (See id. ¶¶ 111–17.) Although filing in Holladay Justice Court, the Prosecutor Defendants filed the charges on behalf of Cottonwood Heights based on events occurring in Cottonwood Heights

[1] The Plaintiffs' counsel in this federal civil rights action represented Mr. Ellis in his second state prosecution but was unaware of what the judge had said during the first prosecution, when Mr. Ellis had a different attorney. (Am. Compl. ¶ 98–100.)

and an arrest made by Cottonwood Heights police officers.[2] (See ECF No. 49 at 9–10 (dismissing City of Holladay as a defendant).)

The Plaintiffs object to the number and timing of attempted prosecutions. They assert that the Cottonwood Heights Defendants and the Prosecutor Defendants conspired to prosecute Mr. Ellis in justice court to retaliate against the Plaintiffs for filing a civil rights suit, pointing to the fact that the Prosecutor Defendants filed the third set of charges against Mr. Ellis only six days after the Plaintiffs sued the Officers.

The Cottonwood Heights Defendants deny the allegations. Chief Russo, in a declaration filed during the first round of motions to dismiss in this civil suit, explained that "[w]hen the District Attorney's office decides to file charges in a case the City [of Cottonwood Heights] has referred, there is no formal process by which the District Attorney's office keeps the City updated on the status of the case." (Decl. E. Robby Russo ¶ 4, ECF No. 27-3.) Cottonwood Heights also does not monitor pending charges brought by the District Attorney. (Id. ¶ 5.) So Cottonwood Heights was unaware that the criminal charges against Mr. Ellis in Third District Court had been dismissed until it learned of that fact through the Ellises' civil rights complaint. (Id. ¶ 6.) According to Chief Russo, "[h]ad the City [of Cottonwood Heights] learned that the charges brought by the District Attorney had been dismissed sooner, the City would have forwarded the case to the City Prosecutor at that time." (Id. ¶ 12.) When Chief Russo did learn the charges had been dropped, he "contacted the Cottonwood Heights Prosecutor, [Defendant James] Hansen, and told him that the City would be forwarding the case to his office for screening to determine whether to bring charges in justice court." (Id. ¶ 6–7.) He asserts that "[t]he only connection with the filing of the lawsuit is that it happens to be how the City learned

[2] Cottonwood Heights and Holladay are neighboring suburbs south of Salt Lake City.

that the charges by the District Attorney's office had previously been dismissed." (Id. ¶ 15.) As for allegations specific to him, he responds that he "did not pressure the City Prosecutor to file charges against Mr. Ellis for any reason, including that this lawsuit had been filed." (Id. ¶ 13.)

The Plaintiffs suggest that the Cottonwood Heights Defendants and the Prosecutor Defendants are not telling the truth about why they prosecuted Mr. Ellis. As support, the Plaintiffs cite an email from Holladay City's attorney to Plaintiffs' counsel. In that email, Holladay's attorney relayed that Mr. Hansen "started the screening of the case and commenced the effort to refile long before he was aware of the [civil rights] lawsuit." (Email from Gregory N. Hoole to R. Shane Johnson dated Nov. 12, 2021, Ex. 7 to Pls.' Resp. to Cottonwood Heights Mot. Dismiss, ECF No. 38 at 48.) That email is inconsistent with Chief Russo's statement that he asked Mr. Hansen to screen the case only after the Plaintiffs sued.

After the Prosecutor Defendants filed charges in justice court, the Plaintiffs filed an Amended Complaint on January 24, 2022. They bring seven causes of action under 42 U.S.C. §§ 1983, 1985, and 1986: 1) "Unconstitutional Warrantless Search, Detention, Arrest & Failure to Intervene" (against the Officers); 2) "Successful Retaliatory Inducement to Prosecute & Failure to Intervene" (against the Officers); 3) "Excessive Force & Failure to Intervene" (against the Officers); 4) "Conspiracy to Deprive Civil Rights and Failure to Intervene" (against the Officers, Chief Russo, and the Prosecutor Defendants); 5) "Deprivation of Due Process" (against the Prosecutor Defendants and Cottonwood Heights); 6) "Retaliatory Prosecution" (against the Prosecutor Defendants); and 7) "Vindictive Prosecution" (against the Prosecutor Defendants). (Am. Compl. ¶¶ 130–265.) They seek money damages as well as "[a] declaration that Defendants' conduct violated the Ellises' rights under the United States Constitution and under 42 U.S.C. §§ 1983, 1985, and 1986" and "[a]ffirmative relief, ordering that all arrest, booking,

and court filings in the underlying criminal matters be destroyed or sealed and deleted from any state or federal database[.]" (Id. ¶¶ 1–2 of Request for Relief.)

In their Amended Complaint, the Ellises allege the Prosecutor Defendants did not have authority to bring the charges because "they are private independent contractors, and not public prosecutors, as is required by Utah Code and provisions of the Utah and United States constitutions to prosecute criminal actions." (Id. ¶ 109.) They also observe that the Prosecutor Defendants filed the charges in the pending criminal case less than a week after the Plaintiffs filed this case and claim that the third prosecution was filed in retaliation for the Plaintiffs' exercise of their constitutional rights. (See id. ¶¶ 245, 253–54.)

The Plaintiffs include Chief Russo in their claims of retaliatory prosecution. They allege that he

> induced the third prosecution in justice court … by using his political and financial sway over Defendants Hansen Law, [James] Hansen and Melissa Mellor, despite knowing the charges lack[ed] probable cause, and despite his employees' contemptuous failures to appear at two prior preliminary hearings in district court, and for the purpose of hindering or preventing this lawsuit, and to punish the Ellises for the temerity to protest their treatment during and since the attack in their home.

(Id. ¶ 163.)

According to the additional allegations that the Plaintiffs seek to add in a Second Amended Complaint, the Holladay Justice Court disqualified the Prosecutor Defendants based on a discrepancy about what prompted the third prosecution. (See Prop. Second Am. Compl. ¶¶ 138–39, ECF No. 76-1.) Conflict contract prosecutor Rhiannon Mann, who was hired by Cottonwood Heights as a private independent contractor, resumed the prosecution on behalf of Cottonwood Heights. (Id. ¶¶ 144–45.) Because Ms. Mann filed an amended Information to add two misdemeanor domestic violence counts, the case was removed to the Third District Court. (Id. ¶¶ 148–49); Cottonwood Heights City v. Marvin Barnes Ellis, Case No. 231901533.

But that matter was never resolved. In light of Mr. Ellis's death on June 12, 2025, the state court judge dismissed the case. (See ECF No. 50.) After receiving a Status Report from the Plaintiffs, the undersigned judge resumed the federal action, (see ECF No. 51), and the parties filed the motions that are now pending.

## LEGAL STANDARD

To survive a motion to dismiss, the factual allegations in a complaint must raise a plausible right to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–56 (2007). A claim is facially plausible when the plaintiff pleads enough factual content to justify the reasonable inference the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). And while factual allegations asserted in a complaint are accepted as true for purposes of a motion to dismiss, conclusory allegations in a complaint are not entitled to such deference and are insufficient to state a claim. Id.

## ANALYSIS

The court addresses two procedural points raised by the Plaintiffs' motions before turning to the merits of the Defendants' motions to dismiss.

### I. Plaintiffs' Motion to Substitute Party

The Plaintiffs move to substitute the Estate of Marvin Barnes Ellis, through Ann Jeanette Marie Ellis,[3] the Estate's personal representative, as the proper party to pursue Mr. Ellis's claims. The court agrees that such substitution is appropriate under Rule 25 of the Federal Rules of Civil Procedure, which allows the court to order substitution if "a party dies and the claim is not extinguished …." Fed. R. Civ. P. 25(a)(1).

---

[3] The Plaintiffs and Defendants refer to Annjeanette Marie Ellis in their briefing, not Ann Jeanette Marie Ellis. (See, e.g., ECF No. 70 at 1; ECF No. 82 at ¶ 2.) In their Second Amended Complaint, the Plaintiffs should clarify which version of Mrs. Ellis's name is correct.

The Defendants object that the Plaintiffs have not complied with Rule 25 because the Plaintiffs filed their motion to substitute more than 90 days after service of a statement noting Mr. Ellis's death. Specifically, the Defendants contend that the Status Report filed on July 17, 2025, which alerted the court to Mr. Ellis's death, was a proper notice of death under Rule 25 and that therefore the Plaintiffs were required to file their motion to substitute by October 15, 2025. (ECF No. 82.) The Plaintiffs instead filed their motion to substitute on November 12, 2025. (ECF No. 70.)

But the Tenth Circuit has held that a party must file a formal suggestion of death before a motion to substitute will be deemed untimely:

> The running of the ninety-day limitations period under Rule 25(a)(1) is not triggered unless a formal suggestion of death is made on the record, regardless of whether the parties have knowledge of a party's death. Mere reference to a party's death in court proceedings or pleadings is not sufficient to trigger the limitations period for filing a motion for substitution.

Grandbouche v. Lovell, 913 F.2d 835, 836–37 (10th Cir. 1990) (citation omitted) (collecting cases).

The Defendants maintain that Grandbouche is no longer good law. They cite a 2015 amendment to the Federal Rules of Civil Procedure that abrogated Rule 84, thereby no longer requiring parties to use specific forms contained in the Appendix of Forms. See Fed. R. Civ. P. 84 advisory committee's note to 2015 amendment ("Rule 84 and the Appendix of Forms are no longer necessary and have been abrogated.").

The court is not persuaded. Even if there is no longer a specific form that is necessary to file a formal suggestion of death, nothing about the abrogation of Rule 84 overrules the Tenth Circuit's holding that a mere reference to a party's death in a court filing is insufficient to trigger the limitations period. See Grandbouche, 913 F.2d at 836–37. Indeed, the facts of this case

suggest why a formal suggestion of death is necessary: it was unclear for several weeks following Mr. Ellis's death who would be the proper party to substitute, as Mrs. Ellis was not appointed as the personal representative of Mr. Ellis's estate until August 13, 2025. (See Letters of Admin., Ex. 2 to Suggestion of Death, ECF No. 70 at 9.)

Moreover, the Federal Rules contemplate that "[i]f a party … desires to limit the time within which another may make the motion [to substitute], he may do so by suggesting the death upon the record." Fed. R. Civ. P. 25 advisory committee's note to 1963 amendment. The Defendants did not file a formal suggestion of death on the record and therefore cannot claim that the 90-day period has run.

Accordingly, the court substitutes the Estate of Marvin Barnes Ellis, through Mrs. Ellis as the Estate's personal representative, as the proper party in this action under Rule 25.

**II. Plaintiffs' Motion to Amend: Timeliness**

The Plaintiffs move for leave to file a Second Amended Complaint that would add allegations related to the subsequent state court proceedings that had not yet occurred at the time the Plaintiffs filed their Amended Complaint. Under Rule 15 of the Federal Rules of Civil Procedure, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But the court may disallow further amendment "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted).

The Defendants object that allowing the Plaintiffs to file the Second Amended Complaint would be unduly prejudicial because the Plaintiffs filed their motion while the Defendants' motions to dismiss, as well as the motion to substitute party, remained pending. While the court

agrees that the procedural posture of the case is convoluted, the most efficient path forward is for the court to consider all arguments and proposed amendments simultaneously.

In any event, the Defendants have contributed to the confusion by filing motions that are procedurally improper. Under Rule 12(g)(2) of the Federal Rules of Civil Procedure, a party that makes a motion under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." The Defendants have not explained why they were unable to raise issues like prosecutorial immunity in their initial round of motions to dismiss.

That said, the Plaintiffs have not objected to the new motions to dismiss on procedural grounds. (See Pls.' Reply, ECF No. 90 at 5–6 (recognizing that the Defendants could raise identical arguments after the pleadings closed under Rule 12(c)).) "Moreover, the Tenth Circuit has held that a potentially technical violation of Rule 12(g)(2) is harmless where the argument could be presented in a Rule 12(c) motion and all alleged facts are accepted as true." Williams v. Cache Cnty., No. 1:22-cv-00151, 2024 WL 81295, at *1 n.10 (D. Utah Jan. 8, 2024) (citing Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., 771 F.3d 697, 702 (10th Cir. 2014)).

Accordingly, the court will rule on the merits of the Defendants' motions. But the court finds that it may also consider the allegations in the Plaintiffs' proposed Second Amended Complaint without prejudice to the Defendants. As the Tenth Circuit has recognized, "[i]f some of the defects raised in [a previously filed] motion [to dismiss] remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance." Bird v. Easton, 859 F. App'x 299, 302 (10th Cir. 2021) (citing 6 Wright & Miller's Federal Practice & Procedure § 1476 (3d ed. Apr. 2021 update) (footnote omitted)).

The court will separately consider the Defendants' arguments about futility while addressing the issues raised by the Defendants' motions to dismiss.

## III. Defendants' Motions to Dismiss

Because there are two separate motions to dismiss as well as additional allegations that the Plaintiffs wish to include in a Second Amended Complaint, the court finds the most straightforward course through the parties' arguments is to proceed claim by claim.

### A. First Cause of Action: Warrantless Entry, Detention, and Arrest

The Plaintiffs allege that the Officers unconstitutionally entered their hotel room without a warrant or probable cause and proceeded to detain and arrest Mr. Ellis.[4] The Plaintiffs seek damages for the violation of their Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. The court has already determined that only Mr. Ellis—now his estate—has standing to challenge the Officers' actions related to the detention and arrest, whereas all three Plaintiffs have standing to challenge the Officers' warrantless entry. (ECF No. 49 at 11.) And at this stage, the Cottonwood Heights Defendants do not seek to dismiss the claim by Mr. Ellis's estate concerning his arrest, or, presumably, the claim related to Mr. Ellis's detention to the extent this claim is distinct from the challenge to his arrest. (ECF No. 24 at 3.) Instead, the Cottonwood Heights Defendants assert that the Officers are entitled to qualified immunity for the warrantless entry claim as brought by all three Plaintiffs.[5]

---

[4] The Plaintiffs caption their first cause of action as a claim for "Unconstitutional Warrantless Search, Detention, Arrest & Failure to Intervene." The allegations refer to a warrantless entry and contain little detail about a search, other than the Officers' request to see Mr. Ellis's identification. The court therefore refers to the warrantless search claim as a warrantless entry claim.

[5] In their Reply brief, the Cottonwood Heights Defendants state that their motion "does not seek to dismiss Plaintiffs Ann Jeanette Marie Ellis's and A.K.E.'s First Cause of Action for warrantless search …." (Cottonwood Heights Defs.' Reply, ECF No. 92 at 1.) The court finds this assertion perplexing: if the Officers are entitled to qualified immunity for the warrantless

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity[,]" albeit on "a more challenging standard of review than would apply on summary judgment." Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014) (citation omitted). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

"When a § 1983 defendant raises the qualified immunity defense, the burden shifts to the plaintiff." Sawyers v. Norton, 962 F.3d 1270, 1282 (10th Cir. 2020) (citation omitted). "To overcome qualified immunity, a plaintiff must show (1) facts that demonstrate the officials violated a federal constitutional or statutory right, which (2) was clearly established at the time of the defendant's conduct." Id. (citations omitted). The Supreme Court has admonished courts "not to define clearly established law at a high level of generality." Kisela v. Hughes, 584 U.S. 100, 104 (2018) (per curiam) (citations omitted). And although "a case directly on point" is not required, "existing precedent must have placed the … constitutional question [regarding the illegality of the defendant's conduct] beyond debate." Cummings v. Dean, 913 F.3d 1227, 1239 (10th Cir. 2019) (citations omitted). "Ordinarily, … there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other [circuits] must have found the law to be as the plaintiff maintains." Toevs v. Reid, 685 F.3d 903, 916 (10th Cir. 2012) (citation omitted). The court should not "consider district court opinions in evaluating the

---

entry claim brought by Mr. Ellis's estate, then they would certainly be entitled to qualified immunity for the same claim brought by Mrs. Ellis and her son.

legal landscape for purposes of qualified immunity." Ullery v. Bradley, 949 F.3d 1282, 1300 (10th Cir. 2020).

1. Constitutional Violation

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Because of the importance of the home as a space where individuals may be free from unreasonable government interference, "searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). "Police can enter a home without a warrant only with the voluntary consent of the owner or a third party with apparent authority over the premises, or when exigent circumstances exist." Storey v. Taylor, 696 F.3d 987, 992 (10th Cir. 2012). A hotel guest is entitled to no less protection under the Fourth Amendment than a homeowner. See Hoffa v. United States, 385 U.S. 293, 301 (1966); United States v. Arrington, 296 F. App'x 646, 649 (10th Cir. 2008).

The Officers do not dispute that they lacked a warrant when they entered the Ellises' hotel room. Nevertheless, they assert that the Ellises consented to their entry and that, in any event, exigent circumstances existed.

The court is not persuaded by either argument. First, the Ellises alleged substantial facts demonstrating that they did not consent to the Officers' entry. Although Mrs. Ellis opened the door to the Officers' knock, she did not invite the Officers to come inside. (Am. Compl. ¶ 28.) Instead, she insisted that there was no fight and that what the neighbor believed was yelling was merely noise coming from the television set. (Id.) Nevertheless, after stating that "we need to come in and make sure everyone's okay[,]" and within seconds after Mrs. Ellis opened the door, Sergeant Morzelewski and Officer Mahoney pushed their way into the room. (Id.) Mr. Ellis then demanded that the Officers leave. He repeated that request approximately eight times

before stating, presumably because Sergeant Eatchel remained in the hallway: "Okay, then come all the way in." (Id.)[6] After making this statement, Mr. Ellis repeated his demands that the Officers leave multiple times. (Id.) The court therefore finds that the Ellises sufficiently alleged that the Officers entered without consent: Mrs. Ellis did not affirmatively invite the Officers inside, Mr. Ellis asked the Officers to leave, and his later statement to "come all the way in" does not negate his insistence either before or after that statement that the Officers did not have the right to enter the hotel room.

Second, the facts alleged by the Ellises do not establish that exigent circumstances existed such that it would be appropriate to dismiss their unconstitutional entry claim at this stage of the litigation. To determine whether exigent circumstances existed, the court considers "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." United States v. Najar, 451 F.3d 710, 718 (10th Cir. 2006).

The Officers responded to a neighbor's report that the Ellises were having an argument and that the neighbor heard a sound like a body colliding with a wall. (Am. Compl. ¶¶ 22, 140.) But when Mrs. Ellis opened the door, she explained that the neighbor had heard the television and that there was no fight. (Id. ¶ 28.) The Officers did not question Mrs. Ellis about whether

---

[6] In their Reply brief, the Cottonwood Heights Defendants assert that Sergeant Eatchel is entitled to qualified immunity because he never entered the hotel room. (ECF No. 92 at 7–8.) But "this court ordinarily does not consider arguments raised for the first time in a reply brief." Deseret Tr. Co. v. Unique Inv. Corp., No. 2:17-cv-00569, 2018 WL 8110959, at *3 (D. Utah July 3, 2018); accord Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000). The rule ensures judicial efficiency and "protects this court from publishing an erroneous opinion because [it] did not have the benefit of the [opposing party's] response." Stump, 211 F.3d at 533. In any event, the Cottonwood Heights Defendants did not brief the elements of a failure to intervene claim. The Plaintiffs may therefore continue to pursue their first cause of action on a failure to intervene theory.

she was hurt or further ascertain what may have happened before entering the room, nor did they speak with the neighbor before knocking on the Ellises' door. Although the Officers assert that their warrantless entry into the hotel room was reasonable because they "stayed near the threshold[,]" (ECF No. 64 at 13), what is at issue is not how far into the hotel room they made it once they entered. Rather, the Officers must demonstrate that they had an objectively reasonable basis to enter the hotel room in the first place.

The Officers argue that previous federal cases, especially a recent Eighth Circuit case, support their position. (Id. at 14–15.) In Cotten v. Miller, the Eighth Circuit held that exigent circumstances justified a warrantless entry where police officers responded to a neighbor's report of "abuse," "a 'verbal argument,' 'someone being thrown around,' and 'yelling and screaming' in [an] upstairs apartment." 74 F.4th 932, 934 (8th Cir. 2023). But not only is Cotten an out-of-circuit case decided years after the events concerning the Ellises, it was also a review of a summary judgment decision in which the court had the benefit of far more factual development than is present here. See id. at 933. Moreover, the facts are distinguishable in an important way: in Cotten, the police confirmed the neighbor's report by speaking with her before entering the upstairs apartment. Id. at 934 ("When the officers arrived, they spoke with the downstairs neighbor, who confirmed the information in the report, and told the officers that she heard 'really, really aggressive' screaming, screeching, and thuds coming from the upstairs apartment."). Here, the Ellises allege that the Officers failed either to conduct an investigation or confirm the neighbor's report before entering their hotel room.

Cases from the Tenth Circuit support the Ellises' position. In Storey, the Tenth Circuit found that exigent circumstances did not exist where police responded to an "anonymous call reporting a loud argument" and failed to perform any additional investigation before pulling a

resident out of his house and placing him under arrest. 696 F.3d at 990–91. The Tenth Circuit held: "A report of a domestic argument—standing alone—does not demonstrate exigent circumstances per se." Id. at 994 (citation omitted). The court noted that "additional depth and detail in the report, or additional facts learned in the course of the investigation, are required" to establish exigent circumstances. Id.

The Officers suggest that the facts in Storey are distinguishable because the Ellises' neighbor also reported the sound of a body slamming against a wall, not just an argument. (See ECF No. 64 at 12–13). In Storey, the Tenth Circuit referenced a case in which the Ninth Circuit found that there were exigent circumstances where a "caller reported sounds of an argument and [a] physical beating in a hotel room." 696 F.3d at 995 (citing United States v. Brooks, 367 F.3d 1128, 1134 (9th Cir. 2004)). But the report of violence was not, by itself, dispositive, as the Tenth Circuit also found it compelling that "the investigating officer personally spoke with the caller in the hotel lobby to confirm the report and gather additional information before proceeding to the hotel room." Id. (citing Brooks, 367 F.3d at 1134).

And the Tenth Circuit has held in other cases that additional investigation or corroborating facts are necessary to establish exigent circumstances even where there are reports of physical violence. In Lundstrom v. Romero, the police responded to an anonymous report that the caller heard a woman screaming and a toddler being beaten in the backyard of one of the plaintiffs. 616 F.3d 1108, 1115–16 (10th Cir. 2010). The police detained the plaintiffs—handcuffing one and directing her to remain seated on the curb, handcuffing the other and placing him in a police vehicle—even though they stated that no children were present in the home. Id. at 1117–18, 1123, 1125. The Tenth Circuit held that the facts did not establish exigent circumstances that justified the seizures. Id. at 1124–25. Despite the serious allegations

of physical abuse against a child, the Tenth Circuit found that the police needed some additional evidence outside the call itself to justify a seizure. See id. at 1124 ("The officers did not have a reasonable basis for believing [the plaintiff] posed an immediate threat to them, himself, … or anyone else.").

Here, the neighbor's call was the only evidence that the Ellises were involved in a domestic altercation. The Officers did not conduct an additional investigation or otherwise corroborate the neighbor's report. Taking the allegations in the light most favorable to the Plaintiffs, there were no exigent circumstances that allowed the Officers to enter the Ellises' hotel room without a warrant.

2. Clearly Established Law

In Lundstrom, the Tenth Circuit determined that the law was clearly established that "the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." Id. at 1125–26 (quoting Cortez v. McCauley, 478 F.3d 1108, 1117 (10th Cir. 2007)). The law is similarly clearly established that "[p]olice can enter a home without a warrant only with the voluntary consent of the owner or a third party with apparent authority over the premises, or when exigent circumstances exist." Storey, 696 F.3d at 992.

Above, the court has identified several Tenth Circuit cases holding that the allegations made in a phone call are insufficient to establish exigent circumstances sufficient to support a warrantless entry absent additional investigation or corroborating evidence. The court therefore finds that a reasonable officer would have understood that the alleged conduct violated the Plaintiffs' rights to be free from a warrantless entry and seizure.

**B. Second Cause of Action: Retaliatory Inducement to Prosecute**

Mr. Ellis, though his estate, alleges a cause of action for retaliatory inducement to prosecute against the Officers. The Plaintiffs seek to amend their complaint to add Chief Russo to this cause of action.[7]

As a preliminary matter, the Cottonwood Heights Defendants object that the Plaintiffs bring this action in violation of the First, Fourth, Fifth, and Fourteenth Amendments. The Cottonwood Heights Defendants assert that only the First Amendment is implicated in a retaliatory prosecution claim. (ECF No. 64 at 8 (citing Hartman v. Moore, 547 U.S. 250, 256 (2006)); see also Hartman, 547 U.S. at 265–66.

The court agrees that the Fifth Amendment does not apply because Chief Russo and the Officers are not federal officials. But the reference to the Fourteenth Amendment is appropriate, given that the Fourteenth Amendment incorporates the protections guaranteed by the First and Fourth Amendments against intrusion by state actors. Grosjean v. Am. Press Co., 297 U.S. 233 (1936); Mapp v. Ohio, 367 U.S. 643 (1961). Finally, the court declines to strike the Fourth Amendment reference at this stage of the litigation. The Tenth Circuit recognizes a malicious prosecution claim under the Fourth and Fourteenth Amendments. See Becker v. Kroll, 494 F.3d 904, 913–14 (10th Cir. 2007); Sanchez v. Hartley, 810 F.3d 750, 755 (10th Cir. 2016) ("[W]e have repeatedly recognized a cause of action under § 1983 for malicious prosecution under the Fourth Amendment."). Although the Plaintiffs do not use the phrase "malicious prosecution" in the Amended Complaint, the court finds for the reasons discussed below that the facts alleged are

[7] This request is more of a clarification than an amendment. The second cause of action already contains allegations against Chief Russo relating to his involvement with the third Information and the prosecution in Holladay Justice Court. The requested amendment would merely add his name to the caption of the second cause of action.

sufficient to support such a claim. Moreover, the Plaintiffs seek to file a Second Amended Complaint and did bring up a malicious prosecution theory in their opposition to the Prosecutor Defendants' motion to dismiss. (See ECF No. 83 at 12.) The court therefore grants the Plaintiffs leave to clarify whether they proceed under an inducement to retaliatory prosecution theory, a malicious prosecution theory, or both.

"To establish a § 1983 retaliatory prosecution claim against non-immune officials," a plaintiff must plead and prove:

> (1) that [he] was engaged in a constitutionally protected activity; (2) that a defendant's action caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to [his] exercise of [his] First Amendment speech rights.

Becker, 494 F.3d at 925 (citing Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)). A plaintiff "also must plead and prove the absence of probable cause for the prosecution." Id. (citing Hartman, 547 U.S. at 265–66).

Meanwhile, in the Tenth Circuit,

> a § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008).[8]

The court previously considered whether the Plaintiffs had established that the prosecution against Mr. Ellis was retaliatory. (ECF No. 49 at 18–20.) But the court did so in the context of a discussion about whether the court should abstain under Younger v. Harris, 401 U.S.

---

[8] Wilkins was abrogated in part by Thompson v. Clark, 596 U.S. 36 (2022). Thompson clarified that a favorable termination occurs when the prosecution ends without a conviction, for instance because the plaintiff dies before the criminal matter concludes. Id. at 39.

37 (1971). The Younger abstention doctrine requires that "federal courts not interfere with state court proceedings by granting equitable relief … when such relief could adequately be sought before the state court." Amanatullah v. Colo. Bd. of Med. Examiners, 187 F.3d 1160, 1163 (10th Cir. 1999) (citation omitted). Plaintiffs can avoid abstention only in exceptional circumstances, such as "cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction …." Phelps v. Hamilton (Phelps II), 122 F.3d 885, 889 (10th Cir. 1997) (citation omitted). To determine whether the Plaintiffs had established these exceptional circumstances, the court considered Chief Russo's sworn declaration, (see ECF No. 49 at 18–19), and concluded that the Plaintiffs did not meet their "heavy burden of proof" to avoid Younger abstention, (id. at 22 (citing Phelps v. Hamilton (Phelps I), 59 F.3d 1058, 1064 (10th Cir. 1995))).

There is no longer an ongoing state prosecution, and, in the context of a motion to dismiss, the inferences are flipped. The court must now consider the alleged facts in the light most favorable to the Plaintiffs and is generally limited to the four corners of the complaint. See Fuqua v. Santa Fe Cnty. Sheriff's Off., 157 F.4th 1288, 1297 (10th Cir. 2025) (citing Cuervo v. Sorenson, 112 F.4th 1307, 1312 (10th Cir. 2024)). The court therefore does not consider extrinsic evidence, such as Chief Russo's declaration.

With the proper standard in mind, the court finds that the Plaintiffs have sufficiently alleged inducement to retaliatory prosecution and malicious prosecution claims. First, as discussed above, the court finds that the law was clearly established that the Officers were not allowed to enter the Ellises' hotel room without further investigation of the neighbor's statements. As a result, assuming the truth of the Plaintiffs' allegations, a reasonable officer would have known that no probable cause existed to charge Mr. Ellis with assault against a peace

officer, interference with an arresting officer, or failure to disclose identity.[9] And at the time of Mr. Ellis's arrest, the law was "clearly established that a police officer who makes false statements in a police report may be held liable in a § 1983 malicious prosecution action." Barton v. City & Cnty. of Denver, 432 F. Supp. 2d 1178, 1208 (D. Colo. 2006) (citing Taylor v. Meacham, 82 F.3d 1556 (10th Cir. 1996)); see also Robinson v. Maruffi, 895 F.2d 649, 655–56 (10th Cir. 1990) (finding that police officers could be held liable for malicious prosecution where they "purposefully concealed and misrepresented material facts to the district attorney which may have influenced his decision to prosecute").

Although the Cottonwood Heights Defendants assert that Ms. Ellis cannot establish that their actions led to his prosecution, the Plaintiffs include additional allegations that suggest something may have been amiss. First, Mr. Ellis was never prosecuted for domestic violence, which was the reason the Officers arrived to investigate in the first place. Second, two separate state prosecutions were dismissed in unusual circumstances because the Officers—although they assert that they were at the courthouse—failed to appear. Third, Mr. Ellis's subsequent prosecution, the one brought in the Holladay Justice Court, was initiated only six days after filing this civil rights lawsuit. Although Chief Russo provided an explanation of this timing to support the Cottonwood Heights Defendants' arguments on Younger abstention, it would be error to consider this declaration at the motion to dismiss stage without converting the motion into a motion for summary judgment. See Tal v. Hogan, 453 F.3d 1244, 1266 (10th Cir. 2006) ("Rule 12(b)(6) motions to dismiss are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint."). And given that the Cottonwood Heights Defendants failed to

[9] Other than their assertion that the warrantless entry was appropriate given the circumstances, the Cottonwood Heights Defendants have not argued why there was probable cause to charge Mr. Ellis with these offenses.

raise qualified immunity at all in their first motion to dismiss, the court finds that the case should proceed to discovery without further delay. The Cottonwood Heights Defendants may renew their motions for qualified immunity at summary judgment, when the court will have the benefit of a more complete factual record.

The court therefore denies the Cottonwood Heights Defendants' motion to dismiss the Plaintiffs' second cause of action. Moreover, the court grants the Plaintiffs leave to amend their complaint to clarify that they assert this cause of action against Chief Russo. The Plaintiffs may also clarify whether they proceed on a First Amendment inducement to retaliatory prosecution theory, a Fourth Amendment malicious prosecution theory, or both.

**C. Third Cause of Action: Excessive Force**

Mr. Ellis, through his estate, alleges that Sergeant Morzelewski, Sergeant Eatchel, and Officer Mahoney used excessive force or failed to intervene when they were arresting Mr. Ellis. He seeks damages for the violation of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. The Officers do not challenge this cause of action at this stage of the litigation. (See ECF No. 64 at 3.) As a result, Mr. Ellis's estate may proceed with this cause of action against the Officers.

**D. Fourth Cause of Action: Civil Rights Conspiracy**

Although the Plaintiffs assert a claim for civil rights conspiracy in violation of 42 U.S.C. §§ 1985 and 1986, they concede that they have not specifically alleged racial animus and do not challenge the Defendants' arguments that this cause of action should be dismissed. (See Pls.' Mem. Opp'n Prosecutor Defs.' Mot. Dismiss, ECF No. 83 at 1.) Accordingly, the court dismisses this cause of action.

**E. Fifth Cause of Action: Due Process**

Mr. Ellis, through his estate, brings a claim for deprivation of due process against Cottonwood Heights and the Prosecutor Defendants. The Plaintiffs argue that the use of private prosecutors offends both the United States and the Utah Constitutions. The Plaintiffs seek to amend this claim to include an additional prosecutor, Ms. Mann.

Cottonwood Heights and the Prosecutor Defendants argue that this cause of action must be dismissed because the Utah Constitution does not forbid the use of private prosecutors. (See ECF No. 63 at 10–13; ECF No. 64 at 23–27); see, e.g., State v. Robertson, 924 P.2d 889 (Utah 1996). But what the Utah Constitution permits is mostly beside the point. The argument that the court must consider under § 1983 is whether the use of private prosecutors violated Mr. Ellis's federal rights. The Plaintiffs point to cases raising federal due process concerns where a private prosecutor controls critical prosecutorial decisions:

> [T]he participation of a privately-retained attorney in a state criminal prosecution does not violate the defendant's right to due process under federal law unless the private attorney effectively controlled critical prosecutorial decisions. Such decisions include "whether to prosecute, what targets of prosecution to select, what investigative powers to utilize, what sanctions to seek, plea bargains to strike, or immunities to grant."

Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154 (10th Cir. 2001) (first citing East v. Scott, 55 F.3d 996, 1000–01 (5th Cir. 1995); and then citing and quoting Person v. Miller, 854 F.2d 656, 663–64 (4th Cir. 1988)). Moreover, the Supreme Court has expressed concerns about appointing a private prosecutor in a contempt action where the private prosecutor represents the private beneficiary of the court order. Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 810–14 (1987).

The Defendants do not engage with these arguments or explain whether the Plaintiffs have failed to adequately allege that the Prosecutor Defendants were subject to appropriate

oversight. And at this stage of the litigation, the court accepts as true the Plaintiffs' assertion that the Prosecutor Defendants had extensive control over critical prosecutorial decisions. Accordingly, the court finds that the Plaintiffs have plausibly alleged a due process violation under the Fourteenth Amendment against Cottonwood Heights.

But the court agrees with the Prosecutor Defendants that they are protected by prosecutorial immunity. "It is well established that prosecutors are absolutely immune from suit under section 1983 concerning activities intimately associated with the judicial process, such as initiating and pursuing criminal prosecutions." Majersky v. City & Cnty. of Denver, No. 25-1200, 2026 WL 161381, at *3 (10th Cir. Jan. 21, 2026) (quoting Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1489 (10th Cir. 1991)). To determine whether absolute immunity applies to specific conduct, "courts consider (1) whether the action is closely associated with the judicial process; (2) whether the action is a uniquely prosecutorial function; and (3) whether it requires the exercise of professional judgment." Marshall v. Dix, 640 F. Supp. 3d 1033, 1050 (D. Colo. 2022) (citing Mink v. Suthers, 482 F.3d 1244, 1261 (10th Cir. 2007)).

Here, the Plaintiffs maintain that the Prosecutor Defendants lacked probable cause for the counts contained in the third Information and purposefully manipulated the type of charges filed to avoid a third prosecution in district court, where the case would likely have been dismissed. But these decisions implicate the core prosecutorial functions of deciding whether and how to charge a case. And the Tenth Circuit has held that prosecutors are entitled to immunity "even if the prosecutor files charges knowing he lacks probable cause." Becker, 494 F.3d at 925 ; see also id. ("A prosecutor's charging decisions are absolutely immune from civil suit for monetary damages.").

The Plaintiffs argue that the Prosecutor Defendants should not be granted immunity because they are private prosecutors, but this claim is encompassed within the Plaintiffs' due process challenge against Cottonwood Heights. Even if the court were to find that the use of private prosecutors violated Mr. Ellis's due process rights, the private prosecutors would have still been acting as prosecutors. And when the court determines whether particular government acts are immune from legal challenges, the court "looks to the nature of the function performed, not the identity of the actor who performed it." Malik v. Arapahoe Cnty. Dep't of Soc. Servs., 191 F.3d 1306, 1314 (10th Cir. 1999) (cleaned up).

The court therefore finds that the Prosecutor Defendants are entitled to absolute immunity even if Mr. Ellis's estate is successful in its due process challenge against Cottonwood Heights. The court dismisses this cause of action against the Prosecutor Defendants and declines to allow the Plaintiffs to amend their complaint to assert this claim against Ms. Mann, as such amendment would be futile. Finally, the court notes that Cottonwood Heights is a state actor and therefore strikes the reference to the Fifth Amendment. The Plaintiffs' claim that Cottonwood Heights's use of private prosecutors was a violation of Mr. Ellis's due process rights may proceed, but only under the Fourteenth Amendment.

**F. Sixth Cause of Action: Retaliatory Prosecution**

Mr. Ellis, through his estate, brings a claim for retaliatory prosecution against the Prosecutor Defendants. The Plaintiffs seek to amend this claim to include an additional prosecutor, Ms. Mann.

For the reasons stated above, the court finds that Ms. Mann and the Prosecutor Defendants are entitled to absolute immunity. As the Supreme Court has stated, a retaliatory prosecution claim is really a cause of action for "successful retaliatory inducement to prosecute"

and lies against "a nonprosecutor … who may have influenced the prosecutorial decision but did not himself make it …." Hartman, 547 U.S. at 262. Even if the use of private prosecutors ran afoul of Fourteenth Amendment due process protections, Ms. Mann and the Prosecutor Defendants were still acting as prosecutors.

The Prosecutor Defendants are accordingly immune from the Plaintiffs' retaliatory prosecution claim, and the court dismisses this claim with prejudice. See Majersky, 2026 WL 161381, at *3 (affirming dismissal with prejudice of the claims against a prosecutor on the grounds of absolute immunity). Moreover, the court finds that it would be futile to amend the complaint to include a claim for retaliatory prosecution against Ms. Mann.

**G. Seventh Cause of Action: Vindictive Prosecution**

For the same reasons the court dismisses the fifth and sixth causes of action, the court dismisses the Plaintiffs' claim for vindictive prosecution against the Prosecutor Defendants and declines to allow the Plaintiffs leave to amend their complaint to assert this claim against Ms. Mann. The court notes further that vindictive prosecution appears to be a claim that can only be raised in a criminal case. See, e.g., United States v. Ray, 899 F.3d 852, 860 (10th Cir. 2018) ("Vindictive prosecution occurs when the government retaliates against a defendant for exercising his or her constitutional or statutory rights, such as the right to file an appeal or the right to present a defense."). Because Ms. Mann and the Prosecutor Defendants are entitled to absolute immunity, the court need not decide whether a plaintiff may bring a claim for vindictive prosecution in a civil action. But the court notes it has not found any authority supporting this proposition.

For these reasons, the court dismisses the vindictive prosecution claim against the Prosecutor Defendants with prejudice and declines to grant the Plaintiffs leave to amend their complaint to assert this claim against Ms. Mann.

**H. Eighth Cause of Action: First Amendment Retaliation**

Finally, the Plaintiffs seek leave to amend their complaint to add a cause of action for retaliation in violation of the First Amendment. The court denies this request.

First, the Plaintiffs may not assert this claim against Ms. Mann or the Prosecutor Defendants because they are entitled to absolute immunity. Second, the claim against Chief Russo is duplicative of the Plaintiffs' second cause of action. And as the court has held above, the Plaintiffs are granted leave to clarify that they assert their second cause of action against Chief Russo as well as against the Officers. Third, the Plaintiffs seek to assert this claim against a new defendant, Lieutenant Daniel Bartlett. But the allegations against Lieutenant Bartlett amount to claims that Lieutenant Bartlett made complaints about Plaintiffs' counsel to the Utah State Bar. (Prop. Second Am. Compl. ¶¶ 141–43, 306.) The court finds that these claims must be raised in a separate action. The Plaintiffs have not made plausible allegations that either Mr. Ellis's criminal prosecution or the Plaintiffs' civil rights case were significantly affected by any bar complaints. Accordingly, the Plaintiffs do not have standing to bring these claims on behalf of their attorney.

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1. The Plaintiffs' Motion to Substitute Party (ECF No. 70) is GRANTED.

2. The Plaintiffs' Motion to Amend Complaint (ECF No. 76) is GRANTED IN PART and DENIED IN PART.

3. Within 14 days of this order, the Plaintiffs must file their Second Amended Complaint. The Second Amended Complaint must conform to the court's rulings in this order and must not add additional allegations other than those proposed in the Plaintiffs' motion.

4. The Prosecutor Defendants' Motion to Dismiss (ECF No. 63) is GRANTED IN PART and DENIED IN PART.

5. All claims against Defendants James Hansen, Hansen Law PC, and Melissa Mellor are DISMISSED WITH PREJUDICE.

6. The Plaintiff is DENIED leave to file any claims against Rhiannon Mann.

7. The Cottonwood Heights Defendants' Motion to Dismiss (ECF No. 64) is GRANTED IN PART and DENIED IN PART.

8. The Plaintiffs' First Cause of Action may proceed as currently pled. The court has previously clarified that Mrs. Ellis and her son only have standing to challenge the warrantless entry (and failure to intervene), whereas Mr. Ellis's estate may challenge the warrantless entry, detention, and arrest (and failure to intervene).

9. The Plaintiffs' Second Cause of Action may proceed. The court strikes the reference to the Fifth Amendment. But the court grants the Plaintiffs leave to amend their complaint to assert this cause of action against Chief Russo.

10. The Plaintiffs' Third Cause of Action may proceed as currently pled.

11. The Plaintiffs' Fourth Cause of Action is DISMISSED WITH PREJUDICE.

12. The Plaintiffs' Fifth Cause of Action may proceed against Cottonwood Heights. This claim is DISMISSED WITH PREJUDICE against the other Defendants. The court strikes the reference to the Fifth Amendment.

13. The Plaintiffs' Sixth Cause of Action is DISMISSED WITH PREJUDICE.

14. The Plaintiffs' Seventh Cause of Action is DISMISSED WITH PREJUDICE.

15. The Plaintiffs are not granted leave to amend their complaint to add their proposed Eighth Cause of Action, as the court finds this cause of action would be futile.

DATED this 30th day of September, 2026.

BY THE COURT:

Tena Campbell
United States District Judge